[Civ. No. 7295. Second Appellate District, Division Two.—March 16, 1933.]

HERBERT SCHOLFIELD, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, Respondent.

D. Z. Gardner for Appellant.

O'Melveny, Tuller & Myers and Marshall Taylor for Respondent.

ARCHBALD, J., *pro tem.*—In 1928 one George T. Porter was apparently secretary of the Universal Sales Corporation, which conducted a plumbing business in Los Angeles, and was a depositor in a branch bank in Hollywood conducted by defendant's assignor, Los Angeles-First National Trust & Savings Bank, hereinafter referred to as "Bank". The manager of said branch bank at the times in question here was one C. L. Lamping. Said Sales Corporation becoming involved, applied to said Lamping for assistance. Plaintiff and his assignor, Dwight Lanning, advanced $1500 each to said Sales Corporation, through said Lamping, and such Sales Corporation gave to each its note payable on demand, for such sums. No interest was specified in the notes, but said Lamping was to be paid the sum of $200 per month, as salary, by said Sales Corporation, which was to be divided between those so advancing money. The first contributors apparently were plaintiff's assignor, one Van Dam, and said Lamping. The last-named contributed the sum of $1,000. Afterwards plaintiff came into the pool. Said Sales Corporation was to place in the hand of said Lamping as collateral security, to the contributors to said pool, notes and accounts due it. Said bank also advanced the Sales Corporation approximately $4,000 and was given notes and accounts to secure the same. It was the contention of plaintiff that certain of said securities, belonging to the individual creditors and in an amount in excess of their claims, were collected by the bank and applied on its own indebtedness. Plaintiff brought suit on his own claim and the assigned claim of Lanning, against defendant as successor of said bank, succeeding to its assets and liabilities. From an order granting a nonsuit, made on motion of defendant at the close of plaintiff's case, the latter has appealed.

It is apparent from the evidence that a question had arisen between the bank and the individual creditors as to the ownership of certain of the collateral that had been deposited by the Sales Corporation, either with the bank or Lamping, its manager. A meeting was finally arranged at which Mr. Myers, assistant manager of the bank, the

plaintiff, Lanning, William Scholfield and Mr. Porter of the Sales Corporation were present. Mr. William Scholfield, a brother of plaintiff, testified that he had a conversation with Mr. Myers and that he was "told to come to the bank and be in a meeting with Mr. Porter with regard to his account and collaterals that were to secure notes held by Mr. Scholfield, Mr. Lanning and Mr. Lamping, as I understood, and Mr. Van Dam". The plaintiff himself was asked on cross-examination if such meeting "wasn't an accommodation meeting whereby Mr. Porter was to be present and explain the amounts and balances due", to which the witness replied: "No, it came about through my going to see Mr. Hartcort of the bank, and Mr. Hartcort didn't want to listen to us at first; we made an appointment with him and he said he was very busy, and we took the matter up with Mr. Hartcort and Mr. Hartcort said he would have this matter straightened up, and that is how this thing happened." William Scholfield testified that at the meeting "Mr. Myers sat at the head of the table and said, 'Excuse me, boys, I will get the papers,' and he went down and got the papers out of a little file in the front part of the bank, brought them back, and he said, 'we will list them'; . . . and he had the stack before him . . . and asked me to look at my list and see if they agreed. He said, 'Now we will number them, and you put these numbers on your papers and we will see if they agree.' And he went to No. 1, and the amount of that was . . . $937.50, with a balance of $418.75, . . . and Mr. Porter gave us who those collaterals belonged to. Mr. Myers asked the question and Mr. Porter immediately said, 'That goes to secure Mr. Scholfield and Mr. Lamping and Mr. Van Dam.' . . . Mr. Myers finished that item and put it on a pile to one side." From the testimony it appears that two piles were made, one composed of the collaterals that were designated by Porter as belonging to "the men", and the other as belonging to the bank, which latter were designated "1B", etc., and were so checked by William Scholfield on his list, which, as testified, was made by Porter. Among those put on the pile designated as belonging to plaintiff and his associates was an order by the "English Plumbing Co., endorsed by Paul Shapiro," which was No. 5, with a balance of apparently $1750 due, and another, numbered 6, "on F. E. Miner" for $1960 due. Plaintiff testi-

fied that Mr. Myers told him Shapiro had paid $1,025 to
the bank. With regard to No. 6, which involved property on
Stanley Avenue in Los Angeles, it was testified that this
was paid by a check to the bank for $1838.38. There was
no collateral of Shapiro or Miner designated "1B", etc.,
on the list. The list so made and checked was not put in
evidence, but was testified to by the two Scholfields and
Dwight Lanning. William Scholfield testified that after
the making of the list he checked it with the one Mr. Myers
made, at the latter's request, and that they corresponded,
and that thereafter, at the instruction of Lamping, he in-
vestigated the properties covered by the collaterals, and fre-
quently saw the collaterals. He said that Lamping had
"one list of securities of the bank's and one that belonged
to these men. . . . He kept them in a metal file back of one
of the teller's counters, and he had a rubber band around
each of them, separately." On cross-examination Myers
testified that he was assistant branch manager and had
charge of the notes due the bank, and that there were
securities pledged with those notes. There is testimony
from which one could conclude that the securities after being
separated were kept in two places, the ones the bank claimed
being attached to and kept with the notes of the bank, and
those belonging to the individuals being kept in Mr. Lam-
ping's desk. There is a conflict in the evidence as to whether
the one described by the witnesses as No. 6, relating to the
Stanley Avenue property, and which was for the sum of
$1960, was in the list attached to the notes of the bank, or
in the list on Lamping's desk. Plaintiff testified, how-
ever, that he saw the list in Lamping's desk several
times, and that on one occasion Lamping told him to take
them and collect them. However, he told Lamping that was
his, Lamping's, job. Among the securities he was shown,
according to the witness' testimony, he saw No. 6, but could
not state definitely about the others.

There is evidence that some of the securities in the pos-
session of Myers at the time of the meeting had been de-
posited with Lamping to secure the loans made by plaintiff
and his assignor, and there seems to be no question about
that fact. The receipts given them by Lamping show that
the latter was to hold all securities deposited with him for
plaintiff, Lanning and Van Dam "as their interests may

appear''. This transaction was clearly outside of Lamping's employment; but regardless of that, any securities so held by him, which came into the possession of the bank and of which the bank had knowledge, could not be retained by it. Respondent urges that Porter's statements as to whom the collateral belonged are mere conclusions, and that Myers said nothing to bind the bank as to the division made. Any knowledge Lamping may have had could not be charged to the bank, as the transaction was outside of the course of his employment and one in which the bank had no interest. (*Lothian* v. *Wood*, 55 Cal. 159, 162; *Casco. Nat. Bank* v. *Clark*, 139 N. Y. 307 [34 N. E. 908, 36 Am. St. Rep. 705].) But Lamping did not testify and we do not know what his knowledge was. Mr. Myers, however, was the officer of the bank having custody of its notes and their collateral, and he certainly knew what securities, if any, the bank claimed as collateral to its notes. He was present at the meeting called by someone in the bank. Mr. Porter, who seemed to be the only one appearing in the transactions of the Universal Sales Corporation with any of the parties involved here, designated each security named by Myers as belonging to either the bank or plaintiff and his associates, and Mr. Myers made two piles, one designated as the bank's and the other as plaintiff's and his associates'. Those designated as belonging to the bank were later attached to the notes of the bank and the others were kept in Lamping's desk. It is true that Myers said nothing. But knowing, as he must have, whether any of them were attached to the notes of the bank, it is inconceivable that he would have sat silent if Mr. Porter had said any of such belonged to plaintiff. While ordinarily a statement that a certain security ''belonged to'' the bank, or to plaintiff and his associates, would be a conclusion, we are of the opinion that in the connection and under the circumstances under which they were made here they were in effect the same as though Porter had given in detail the conversations had when he deposited the various items as security. It was his conclusion, having particular knowledge, that all present wanted, and we think the court might well draw the conclusion that the actions of Mr. Myers, both at the meeting and afterwards, as shown by the testimony favorable to plaintiff, amounted to a segregation of the securities by the bank, and that the evidence produced

by plaintiff, with the aid of all legitimate inferences favorable to him and ignoring conflicts and inconsistencies, would support a judgment for him for the two-thirds of the two payments which such evidence shows were made to the bank. We anticipate defendant's evidence will give rise to other and possibly more serious conflicts, but such should be settled by a decision on the merits, which, in our opinion, should have been made.

Order granting motion for nonsuit reversed.

Craig, Acting P. J., and Stephens, J., concurred.