No. 31,850

Dora Scovill Ryan et al., *Appellees,* v. Addie Scovill et al., *Defendants.* (The Freeport State Bank, *Appellant.*)

(37 P. 2d 1007)

Opinion filed December 8, 1934.

*Donald Muir,* of Anthony, for the appellant.
*Harry B. Davis,* of Anthony, for the appellees.

The opinion of the court was delivered by

Johnston, C. J.: Addie Scovill and Fred Scovill were husband and wife until January 19, 1933, and at that time a divorce was granted to Mrs. Scovill, who was also awarded the custody of the children, and a division of the property owned by them was made.

Among other things the decree contained this provision:

"That the property rights of said persons be disposed of as follows: That the receiver herein collect the assets of said estate in money, that are not already collected, except the liberty bonds and war savings stamps; that said liberty bonds of the value of fifteen hundred dollars and said war savings stamps of the par value of one hundred dollars are ordered to be placed in the hands of said plaintiff as trustee for said minor children, which trustee shall hold the same subject to the further order of this court, and said trustee shall execute a bond in the sum of sixteen hundred dollars conditioned that she will faithfully perform said trust and hold said bonds subject to the further order of said court, in trust for said children."

It will be observed that she was appointed trustee for the minor children and given control of the $1,500 liberty bonds, together with $100 of war savings stamps, which she agreed to hold for the minor children subject to the further order of the court. The bond was conditioned that she would faithfully perform the trust and hold the bonds subject to the further order of the court in trust for the children. A. J. Hilliard had been acting as receiver in the divorce action and he was also the cashier of the Freeport State Bank.

It was alleged that the only interest Addie Scovill had in and to the fund was as trustee for the plaintiffs herein. It is alleged that the Freeport State Bank, through its cashier, Hilliard, had good reason to know that the liberty bonds and stamps were converted into cash by the defendant Freeport State Bank, through its cashier, and the proceeds derived therefrom were converted to the use and benefit of the defendants, the Burtons. All this was done without first obtaining from the district court of Harper county an order therefor, or even making a request or application for such an order, and it was a breach of the trust undertaken by Mrs. Scovill. That the plaintiffs did not know or learn of the fraud perpetrated upon them or either of them by the act of the defendants, the Burtons and the bank, as aforesaid, until the first day of April, 1933, wherefore they demanded judgment against the defendants. A verdict returned by the jury was for Martha Scovill and against the defendants Addie Scovill and the Freeport State Bank, for $1,353.60. An appeal was taken by the Freeport State Bank and it is insisted that said bank is under no liability for the wrongful loss of the money and is not accountable for it.

The bond for the trustee was signed by Grant Burton, who was a brother-in-law of the trustee, Mrs. Addie Scovill. She left the liberty bonds and savings stamps in the Freeport State Bank, of which Hilliard was in charge, and who had been the receiver in the divorce action. Orvill Burton came to see her and sought to borrow the money in the trust fund. He also applied for $1,500 of her own money. The loan was made to her sister's son, and she had asked Hilliard about the loan, and he said Orvill was honest and recommended the loan. She obtained the advice of a lawyer, E. C. Wilcox, who stated that he thought Orvill was all right.

The loan was made by the trustee to her sister's son and it is probable that she was easily satisfied with the recommendations

of the borrower, and may not have known that she was required to ask the court for authority to dispose of the bonds. They were accepted and held by the trustee subject to the further order of the court, and she disposed of them contrary to and in violation of the order. The money was loaned at six per cent interest, which was paid for some time without question. He was probably not aware of the limitation that it was subject to the order of the court. It appeared that the bonds were disposed of in 1921, and this action was not brought until June, 1933. When the court learned the bonds had been sold in violation of the trust, the court could have removed the trustee and appointed another, but it was not brought to the attention of the court, although about twelve years had elapsed since the diversion of the fund was made, and one of the children had grown up and was married, and the younger one was about twenty years of age. Then the children learned of the facts and an attempt was made to fasten liability on some responsible party, and suit was brought, not against the estate of Hilliard, who had previously died, nor upon the bond, but against the bank; which was not a party to any of the proceedings.

So far as Hilliard was concerned he would not be liable for the funds unless he was acquainted with the facts and conspired with the trustee to violate the trust, by wrongfully disposing of the bonds. The record does not show that he was active in the transaction or did more than prepare the note signed by Burton, suggest the loan—provided higher interest could be procured—and tell her that Orvill Burton was looking for a loan. He did not discuss the questions involved here, but advised her, as did the lawyer, Wilcox, who recommended Burton. To hold responsible outside or third parties who suggest that signers are good and responsible, without signing the instruments, would open up a new chapter in the responsibility of those who merely express a passing opinion.

The bank, it appears, had no knowledge of the situation of the parties unless it was imparted to it by the cashier. The cashier had been the receiver in the divorce proceeding and was not then acting for the bank. He was acting for an individual, for himself and not for the bank. It appears that the trustee deposited the money in the bank and it was there for a short time. It did not devolve on the bank to search out the questions of where the money had been derived or of equities that might attach to it, unless it was so indicated in the deposit. It has been held that notice to or acquired

by the president of a bank while acting for himself in his own separate undertaking is not imputable to the corporation and it will not be bound by the knowledge of the acts of its officers under such circumstances. (*Bank v. Skinner,* 10 Kan. App. 517.) The question was involved in *Wickersham v. Chicago Zinc* Co., 18 Kan. 481, 486, and the court, in deciding it, said:

"The general rule is based upon the principle that, as it is the duty of the agent to act upon the notice for his principal, or to communicate the information to his principal in the proper discharge of his trust as such agent, notice to the agent is likewise legal notice to his principal. This rule applies to the agents and officers of corporations, as well as others. This general rule has no application, however, to a case in which the one party does not act as agent, but avowedly for himself, and adversely to the interests of the other. In other words, neither the acts nor knowledge of an officer of a corporation will bind it in a matter in which the officer acts for himself, and deals with the corporation as if he had no official relations with it." (Citing cases.)

See, also, Restatement, Agency, sections 277-282.

There was no proof of the knowledge of the violation of the trust being brought to the bank unless it came to it through the knowledge of the same fact by Hilliard, if he knew of it. He was not shown to have been in the court room when the judgment was entered, nor was it shown that it had come to his attention afterwards. There was nothing in the deposits indicating the source of them or the limitations upon them. Although Hilliard prepared the note which Burton signed he was then acting for the trustee, and it seems that even she had not seen the order of the court imposing the limitation. Burton had not seen it nor heard about it, and if the principal actors in the transaction were not informed on the subject, we cannot be surprised that Hilliard did not know of it. Besides, the bank is one notch further away and must have gotten its information through Hilliard, who the proof fails to show was aware of the fact.

In *Dillaway v. Butler,* 135 Mass. 479, it was decided:

"A, to whom B was indebted, advised C to lend money to B on the security of a mortgage of personal property, and acted as C's agent in completing the transaction. With the money thus obtained B paid A the debt which he owed him. Both A and B acted in fraud of the Gen. Sts. C. 118, sections 89, 91; but C had no knowledge of the fraud. Held, that the knowledge of A was not in law imputable to C."

In *Casco National Bank v. Clark,* 139 N. Y. 307, it was held that if a director of a bank which discounted a note, happened to be a

director of a corporation, payee of the note, it is not sufficient to charge the bank with knowledge of equities between the parties.

(See, also, *Aycock Bros. v. Nat'l Bank of Dothan,* 54 Fla. 604; *Fairfield Savings Bank v. Chase,* 72 Me. 226; *Orchard Co. v. Gilmour,* 159 Mo. App. 204; 7 R. C. L. 654.)

The application of the rule sustained by the authorities overthrows the findings and verdict against the Freeport State Bank. It only has appealed, but the trustee against whom the judgment went is not complaining and has not appealed.

The testimony does not connect the bank with the transaction in any way that would make it responsible for the wrong and loss. It was not shown to have had knowledge through Hilliard or any of its officers, and, in fact, it was not shown that Hilliard was acquainted with the facts, and if he knew of the transaction he was not thinking of it in connection with anything he did with reference to the loss.

The adverse findings and verdict will be set aside with the direction to enter judgment in favor of the Freeport State Bank. It is so ordered.