**U. D. SAWYER and Dessie Sawyer,**
**Appellants,**

v.

**MID-CONTINENT PETROLEUM COR-**
**PORATION, a corporation,**
**Appellee.**

**MID-CONTINENT PETROLEUM COR-**
**PORATION, a corporation,**
**Cross-Appellant,**

v.

**U. D. SAWYER and Dessie Sawyer,**
**Cross-Appellees.**

Nos. 5295, 5296.

United States Court of Appeals
Tenth Circuit.

Aug. 22, 1956.

R. H. Wills and J. P. Greve, Tulsa, Okl., for appellee and cross-appellant.

G. T. Hanners, Lovington, N. M., for appellants and cross-appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court for New Mexico in a suit brought by Mid-Continent Petroleum Company to recover $14,259.10 paid to appellants, Sawyers, as compensatory royalty in lieu of drilling a well on an oil and gas lease granted by the Sawyers to Mid-Continent's assignors. The trial court granted restitution of the amounts paid, less attorney fees and expenses incurred by the Sawyers in the sum of $2,500. The judgment is based on a finding that the agreement was entered into and payments made by Mid-Continent under an honest mistake of material fact, to the effect that it would not have entered into the agreement or made the payments if it had known that the lease in question contained unusual provisions relieving it of the obligation to drill the well in lieu of which the compensatory royalty was paid.

The Sawyers have appealed from that part of the judgment granting restitution, and Mid-Continent has appealed from that part of the judgment which

allowed the Sawyers $2,500 for attorney fees and expenses.

The oil and gas lease in question, covering lands in Lea County, New Mexico, was originally executed to K. E. Jennings as agent for J. K. Wadley, who later assigned an undivided three-fourths interest to Mid-Continent. In May 1948, Mid-Continent drilled and completed a producing well on the lease, and soon thereafter petitioned for and obtained an 80-acre spacing order from the New Mexico Conservation Commission. About six months later, the Magnolia Petroleum Company drilled and completed a producing well, known as the Santa Fe 1–C, in the same formation on an adjacent lease, in which neither Mid-Continent nor Sawyer owned any interest. In August 1949, Mid-Continent completed a second well on its Sawyer lease, leaving an undrilled 80-acre location diagonally offsetting the Santa Fe 1–C. Pursuant to demands by Sawyer for a diagonal offset well or compensatory royalty, Mid-Continent finally did enter into the compensatory royalty agreement on the basis of the production of the Magnolia well and paid the sum of $14,259.10 thereunder.

In February 1951, Mid-Continent drilled and completed the diagonal offset, in lieu of which compensatory royalty had been paid. Shortly thereafter, however, the company officers and responsible agents learned of unusual provisions in the Sawyer lease explicitly exonerating the lessee of the obligation to drill the diagonal offset well and suspending all implied obligations until a judicial determination thereof. Mid-Continent thereupon brought this suit for restitution, resulting in the judgment appealed from.

Relying upon the established rule, generally to the effect that knowledge of a corporation's officers, agents and employees is imputable to the corporation, 19 C.J.S., Corporations, § 1078, p. 613; 3 Fletcher Cyc., § 790, p. 20, the appellants take the position that Mid-Continent's lawyers and agents who examined the title when Mid-Continent acquired the lease knew of the unusual provisions with respect to drilling obligations expressed therein. And, such knowledge is said to be imputable to the corporation, when, acting through other officers and agents at a later date and in a different transaction, it entered into the compensatory contract and subsequently paid the monies in question. In sum, appellants deny that Mid-Continent made a mistake of fact and contend that the monies received by them were "voluntary payments" not recoverable by the payor.

■■■ Since a corporation can act only through its officers, agents and employees, it is necessarily chargeable with the composite knowledge of its officers and agents acting within the scope of their authority. 19 C.J.S., Corporations, § 1081, p. 618; Gaynor Lbr. Co. v. Morrison, S.D., 60 N.W.2d 83; Inland Freight Lines v. United States, 10 Cir., 191 F.2d 313; Waite v. Second Nat'l Bank of Belvidere, 7 Cir., 168 F.2d 984, 4 A.L.R.2d 322; 3 Fletcher Cyc. Corp., § 793, p. 28, 833, p. 51. And, the examining attorney for Mid-Continent undoubtedly knew of the unusual provisions in the lease when he approved the title during the transaction with Wadley, and Mid-Continent is therefore chargeable with whatever knowledge the examiner possessed and was under duty to disclose at that time. But, "Knowledge acquired by one agent of a principal will not be imputed to the principal in a subsequent transaction negotiated by another agent unless it was the duty of the agent to transmit the knowledge to his principal." Burke v. United States, 67 F.Supp. 827, 829, 107 Ct.Cl. 106; and see 3 Fletcher Cyc. Corp. § 798, pp. 44–46; Security-First Nat'l Bank of Los Angeles v. Taylor, 123 Cal.App.2d 380, 266 P.2d 914; Stetson Press, Inc., v. Bunsen Oil Burner Corp., 285 Mass. 291, 189 N.E. 103; Murray v. Preferred Acc. Ins. Co., 199 Iowa 1195, 201 N.W. 595; Scholfield v. Security-First Nat'l Bank of Los Angeles, 130 Cal.App. 403, 19 P.2d 998; New Amsterdam Cas. Co. v. Nat'l Newark & Essex Banking Co., 117 N.J.Eq. 264, 175 A. 609; Annotation 73 A.L.R. 420;

Ryan v. Scovill, 140 Kan. 588, 37 P.2d 1007; Cf. Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, modified on other grounds at 363 Mo. 751, 253 S. W.2d 785; Pittman v. Union Planters Nat'l Bank & Trust Co., 6 Cir., 118 F.2d 211. This must be so, otherwise a corporation would never be allowed to forget with consequent denial of restitution for an honest mistake of a material fact.

There is nothing in this record to indicate that the title examiner had any duty, in the scope of his agency, to ascertain the drilling requirements under the lease and to advise the officers and responsible agents of the corporation thereof, or that he in fact ever did so. The title examiner had nothing whatsoever to do with either the negotiation or execution of the compensatory agreement with the Sawyers and the record affirmatively shows that neither the vice-president nor the responsible agents of the appellee, who negotiated the contract, had any knowledge of the exonerating provisions of the lease until just prior to the institution of this suit.

 Doubtlessly, Mid-Continent officials who negotiated the compensatory agreement negligently failed to examine or inform themselves of the exonerating provisions in the lease. But even so, restitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts. Couper v. Metropolitan Life Ins. Co., 250 Mich. 540, 230 N.W. 929; Pingree v. Mutual Gas Co., 107 Mich. 156, 65 N.W. 6; Franklin Life Ins. Co. v. Ward, 237 Ala. 474, 187 So. 462; Restatement Restitution, § 16, p. 70. Indeed, the essence of the equitable doctrine of restitution for mistake of fact is frequently founded in "unconscious ignorance" or forgetfulness of material facts which could have been remedied by the exercise of due care. Pomeroy Equity Juris., § 839; 40 Am.Jur., Payment, §§ 187, 194, 195, 197; Restatement Restitution, § 18, p. 82; § 19, p. 86; 70 C.J.S., Payment, § 157, p. 366 et seq. The evidence amply supports the trial court's findings of honest mistake of a material fact in the consummation of the compensatory agreement.

 Appellants alternatively contend that the agreement was entered into and the compensation paid in settlement of appellee's implied obligations to develop the lease, quite apart from the expressed obligation to protect against drainage. And, it is true, as they suggest, that one who makes a payment because he supposes he is indebted under a mistaken theory cannot recover if he is indebted under another theory. See 40 Am.Jur., Payment, § 188, p. 845. Moreover, one who confers a benefit upon another under the mistaken belief that he is under the duty to do so is not entitled to restitution if it is not inequitable for the transferee to retain the benefit. See Restatement Restitution, § 61, p. 231. Conceding, however, the existence of an implied obligation to develop the lease, apart from the expressed obligation to protect against drainage, the trial court specifically found that there was no duty to further develop the lease any sooner than the drilling of the offset well was commenced by Mid-Continent. In other words, the court determined that a reasonably prudent operator would not have commenced the diagonal offset when demanded by Sawyers, and this finding cannot be said to be clearly erroneous.

The only suggestible basis for allowing the Sawyers to retain the sums paid under the contract is that they were negligently paid through unconscious ignorance. But, having forgiven both negligence and forgetfulness in our application of the doctrine of restitution, there is no equitable basis for the denial of restitution.

The $2,500 deduction which is the subject of the cross-appeal was allowed by the trial court under substantially these facts. At the conclusion of the evidence, the trial court indicated that he thought the money was paid under an honest mistake of fact, and observed that the Sawyers had been required to hire a law-

yer in connection with the agreement to whom they had paid $1,500, and that they had also incurred approximately another $1,000 in expenses. The court indicated that he would enter judgment for restitution provided Mid-Continent would deduct the attorney fees and estimated expenses without interest; and would restore the income taxes paid on the $14,259.10 provided the Sawyers failed to obtain a refund. Mid-Continent agreed to this on condition that the Sawyers would not appeal. The Sawyers did not agree, and prosecuted this appeal.

Since the compromise agreement was never consummated, there could be no consent judgment. This proceedings, however, is governed by equitable principles and the trial court could deduct any expenditures or expenses incurred by the Sawyers because of the receipt of the monies, inasmuch as they were guilty of no fraud or deception. Central Nat'l Bank of Richmond v. First & Merchant's Nat'l Bank, 171 Va. 289, 198 S.E. 883; 40 Am.Jur., Payment, p. 842; Restatement Restitution, § 142, p. 357. But, the burden of proof in respect to any deductions, from the monies to be restored because of the mistake, was upon the appellants. Id., comment g; W. E. Richmond & Co. v. Security Nat'l Bank, 16 Tenn.App. 414, 64 S.W.2d 863.

The evidence fully supports the allowance to the Sawyers of the $1,500 expenditure for attorneys' fees, and this item was properly allowed as a deduction by the trial court from the monies ordered restored to appellee. There is no evidence, however, to support the claimed $1,000 allowance for other expenses and such item was therefore erroneously allowed as a deduction by the court.

The judgment appealed from will be reversed insofar as it allowed the $1,000 deduction for miscellaneous expenses incurred by the Sawyers. In all other respects, it will be affirmed.