CITIZENS CASUALTY COMPANY OF NEW YORK, a corporation, Appellant,

v.

L. C. JONES TRUCKING COMPANY, Inc., and/or L. C. Jones, and/or L. C. Jones Truck Co. and National Surety Corporation, Appellees.

No. 5339.

United States Court of Appeals
Tenth Circuit.

Oct. 18, 1956.

Rehearing Denied Nov. 16, 1956.

Duke Duvall, Oklahoma City, Okl. (Dudley, Duvall & Dudley, Oklahoma City, Okl., with him on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., with him on the brief), for L. C. Jones Trucking Co., Inc.

Clyde Watts, Oklahoma City, Okl. (Looney, Watts, Looney, Welch, Hamill & Nichols, Oklahoma City, Okl., with him on the brief), for National Surety Corp.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

Citizens Casualty Company [1] brought a declaratory judgment action against L. C.

1. Hereinafter called the Casualty Company.

Jones Trucking Company[2] to determine a controversy with respect to the coverage of an automobile liability insurance policy issued by the Casualty Company to Jones, covering the period from December 1, 1952, to December 1, 1953.

Jones has been engaged in the oil field trucking business since 1913, operating under certificates issued by the Interstate Commerce Commission and the respective Public Service Commissions of the states in which it operates, including Oklahoma and Colorado.

It is customary for such a trucker, who transports oil well drilling equipment, also by means of trucks equipped with gin poles and winches to move the drilling rig and drilling machinery to the point where the drilling rig is to be erected[3] and lift them into place. Ninety per cent of Jones' trucks are equipped with gin poles and winches. The gin poles and winches are used to pick up derrick parts and drilling machinery where they have been deposited near the drilling site, move them to the drilling site and put them in place in the process of erecting the derrick and putting the drilling machinery into operating condition.

Charges made by Jones for the transportation proper of oil field supplies and equipment are based on a per hundredweight per mile rate, as prescribed by tariffs on file with the Interstate Commerce Commission and the Public Service Commissions. Charges for moving derrick parts and drilling machinery and putting them in place and in operating condition are based on an hourly rate.

E. H. Gilbert, Jr. is a countersigning agent for the National Surety Company.[4] Prior to December 1, 1952, Jones instructed Gilbert to obtain for him full coverage for liability to third persons arising out of its operations. Gilbert obtained the Casualty Company policy issued to Jones through the Universal Insurance Underwriters and issued to Jones, as countersigning agent, a liability policy of National, intending by the two policies to give Jones complete liability insurance coverage to third persons arising out of Jones' operations. The National policy also covered the period from December 1, 1952, to December 1, 1953.

The Casualty Company policy covered bodily injury liability and property damage liability. The coverage, with respect to bodily injury liability in the Casualty Company policy read:

"1. * * * To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile, including the loading and unloading thereof."

Such policy recited, "The Automobiles described are and will be used only for Transportation of Merchandise purposes * * *" and that the occupation of Jones was "Trucking—Oil Field & heavy machinery."

The National policy covered bodily injury and property damage liability. The coverage provision of the bodily injury provision in the National policy read:

"I. Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

2. Hereinafter referred to as Jones.

3. Hereinafter called the drilling site.

4. Hereinafter called National.

The definition of hazards in the National policy read:

"Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

The policy contained the following exclusion provision:

"This policy does not apply:

"(a) under division 1 of the Definition of Hazards, * * * (3) automobiles or the loading or unloading thereof except upon premises owned, rented or controlled by the named insured and ways immediately adjoining within the territory, if any, designated in the declarations; * * * ."

Prior to June 15, 1953, Keispert and Shoaff Drilling Company [5] had entered into a contract to drill an oil and gas well near Sterling, Colorado. The Drilling Company purchased a drilling rig from the Mid-Continent Supply Company, which contracted with Jones to transport the drilling rig and equipment to the Drilling Company at the lease where the well was to be drilled.

Jones transported the drilling rig and equipment to a place near the drilling site. Included in the equipment was a piece of machinery known as a "kelly head." The kelly head was 40 feet long and weighed approximately 4,000 pounds. It is a device to which the drill pipe is attached. It is square and is run through a square hole in the rotary table. The turning of the table turns a joint and revolves the drill pipe. Placing the kelly head and the drill pipe in position is a part of the erection or rig-up operation.

Jones deposited the kelly head at a point about 200 feet northeast of the drilling site.

The Drilling Company contracted with Jones to furnish trucks, equipped with gin poles and winches, and to move the kelly head and other drilling equipment to the drilling site and place them in position in the rig erecting process, where they were to be secured in place by employees of the Drilling Company.

On June 15, 1953, a Jones truck, equipped with gin pole and winch, operated by its employee, Don Mills, was driven to the place where the rig was to be erected. An employee of the Drilling Company directed Mills to pick up, move and place the kelly head in position. The winch line was attached to the kelly head and it was raised several feet from the ground by means of the gin pole and winch. Mills then drove the truck toward the drilling site for the purpose of placing the kelly head in position. While the truck was moving toward the drilling site, the kelly head fell to the ground, pinned the legs of Marshall, an employee of the Drilling Company, under the kelly head, resulting in personal injuries to Marshall.

In August, 1954, Marshall filed suit in a state court in Texas against Jones, seeking damages for personal injuries resulting from the accident. The action was removed to the United States District Court for the Western District of Texas. The Casualty Company defended the Marshall action under a reservation of rights and settled the claim of Marshall without prejudice to the rights of Jones and the Casualty Company.

Mills did not report the accident to Jones and left the employ of Jones one day after the accident. Jones first learned of the accident in August, 1954, and immediately thereafter gave notice of the accident to the Casualty Company.

Gilbert testified that he was familiar with the operations of Jones and knew that Jones' trucks had been and would be used to transport drilling rigs to the place where they were to be used in drilling operations and thereafter lift, move and place them in position in the rig at the drilling site, and that he disclosed such facts to the Universal Insurance Underwriters; that he followed Jones' instructions to procure full coverage for the different risks involved

---

5. Hereinafter called the Drilling Company.

in Jones' operations; that the Casualty Company policy was designed to cover the risks incident to the ownership, use and maintenance of automobiles by Jones, and the National policy was designed to cover risks incident to operations on premises owned, rented or controlled by Jones; that the premium for the Casualty Company policy was based upon gross earnings of Jones, resulting both from highway transportation and operations at well sites, and that the premium for the National policy was based upon Jones' payroll, excluding truck drivers.

Jones filed an answer and a cross-complaint in the declaratory judgment action. It made National a party defendant to the cross-complaint and sought a judgment against National, adjudicating whether its policy of insurance covered the accident.

The trial court found that no responsible officer or supervisory employee of Jones had actual knowledge of the accident until the month of August, 1954, after the filing of the Marshall action against Jones, and that Jones notified both the Casualty Company and National of the accident immediately after learning of the same in August, 1954.

The trial court further found that the accident resulted from the use and operation of a truck of Jones, while such truck was being used in connection with and as a part of the business of Jones in trucking oil field and heavy machinery and while such truck was being used for the "transportation of merchandise" within the terms of the Casualty Company's policy.

The trial court further found that the accident arose out of the use and operation of a motor truck of Jones upon premises which were under the supervision and control of the drilling contractor and not upon premises owned, rented or controlled by Jones, and that such accident was not covered by National's policy.

From a judgment adjudging that the Casualty Company, under its policy, was obligated to defend the Marshall action and to defend and indemnify Jones against the claims of Marshall arising out of the accident to the extent of its policy limitations and further adjudging that the accident was not covered by National's policy, the Casualty Company has appealed.

■ Ordinarily, knowledge of an accident by an employee truck driver will not be imputed to his employer, where the truck driver is not the employer's agent for the purpose of giving such notice.[6]

■ While the evidence on the issue, with respect to Jones' knowledge of the accident, was conflicting, we cannot say that the court's finding on that issue was clearly erroneous.

■ We conclude that under the facts and the attendant circumstances Jones was excused from giving notice of the accident until August, 1954.[7]

Transportation is the taking up of persons or property at some point and putting them down at another.[8]

6. H. G. Hill Co. v. Georgia Casualty Co., 158 Tenn. 194, 11 S.W.2d 684, 685–686; Piercy v. Frankfort M. A. & P. G. Ins. Co., 142 App.Div. 839, 127 N.Y.S. 354, 357; Mandell v. Fidelity & Casualty Co., 170 Mass. 173, 49 N.E. 110, 112; Woolverton v. Fidelity & Casualty Co., 190 N.Y. 41, 82 N.E. 745, 748, 16 L.R.A.,N.S., 400; Insurance Law and Practice, Appleman, Vol. 8, § 4742, pp. 134–136.

7. Mandell v. Fidelity & Casualty Co., 170 Mass. 173, 49 N.E. 110, 112; Insurance Law and Practice, Appleman, Vol. 8, § 4742, p. 132; American Fidelity & Casualty Co. v. Northeast Arkansas B. L.,

201 Ark. 622, 146 S.W.2d 165, 166; Public Coal Co. v. Continental Casualty Co., 138 Pa.Super. 480, 10 A.2d 860, 861; Note, 76 A.L.R., p. 81.

8. Gloucester Ferry Co. v. Commonwealth of Pennsylvania, 114 U.S. 196, 203, 5 S. Ct. 826, 29 L.Ed. 158; Cunard S. S. Co. v. Mellon, 262 U.S. 100, 121, 122, 43 S. Ct. 504, 67 L.Ed. 894; Republic Oil Refining Co. v. Granger, D.C.Pa., 98 F. Supp. 921, 933; United States v. Kambeitz, D.C.N.Y., 256 F. 247, 250; Dixie Oil Co. v. United States, 5 Cir., 24 F.2d 804, 805; Quinones v. United States, 1 Cir., 161 F.2d 79, 83.

If there is a forward movement, distance is not important.[9]

Here, the Jones truck picked up the kelly head and started a forward movement, for the purpose of moving it to and setting it down in place at the drilling site, and the accident happened during such forward movement. We think, under the facts and attending circumstances, Jones was engaged in transportation of merchandise at the time of the accident. The accident clearly arose out of the operation of the Jones truck.

The accident occurred during operation of the truck, on premises not owned, rented or controlled by Jones, and was not within the coverage of the National policy.

Affirmed.

**9.** Quinones v. United States, supra; Dixie Oil Co. v. United States, supra.