**TRINITY UNIVERSAL INSURANCE COMPANY, Appellant,**

v.

**ROCKY MOUNTAIN WHOLESALE COMPANY, Appellee.**

No. 8030.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1965.

Rehearing Denied Jan. 20, 1966.

Owen Marron, Albuquerque, N. M. (Marron & Houk, Albuquerque, N. M., with him on the brief), for appellant.

David H. Kelsey, Albuquerque, N. M. (Smith & Ransom, Albuquerque, N. M., with him on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellant commenced this action seeking to require Rocky Mountain Wholesale Co. and Jack Beaty, Inc. to interplead and to settle between themselves their claims to the sum of $25,000.00 which had been paid into court by the appellant.

This sum represented the amount which the plaintiff admitted to be due under a fidelity bond which it had issued to Rocky Mountain Wholesale Co., Inc. The tender of this amount by the plaintiff to both defendants had been refused by reason of the claim made by the defendant, Rocky Mountain Wholesale Co., on a subsequent bond numbered 143525. The trial court granted summary judgment for the defendant and counterclaimant, Jack Beaty, Inc., in the amount of $25,000.00 which had been deposited in the registry of the court. This was the counterclaimant's recovery on the initial fidelity bond issued by the appellant, and numbered 133604. The court further granted judgment for the defendant, Rocky Mountain Wholesale Co., on its claim against the appellant in the amount of $15,400.00. This judgment represents the court's determination that the appellant was liable also and separately on its bond No. 143525 for a fidelity loss which had been incurred by

such counterclaimant. The appellant was thus found liable on each bond to the different obligees. This was contrary to appellant's contention that it was liable only on the original bond and in the amount as therein limited.

The principal issue at the trial and on this appeal is whether the knowledge held by certain employees of appellant and by employees of its agent should be imputed to it. This knowledge was of the fact that two separate corporate entities existed, one Rocky Mountain Wholesale Co., Inc., and the other Rocky Mountain Wholesale Co., and that a corporate change which took place was not one of name only but was a sale and purchase of assets. The employee of appellant who signed the second bond running to Rocky Mountain Wholesale Co. testified that he did not know that there were two separate corporations, one the obligee on the first bond No. 133604, and another on the second bond No. 143525. The writing of the second bond naming what was in reality another corporation resulted in the judgment below that this created a new and separate bond and liability not limited by the $25,000.00 maximum specified in the first bond.

The record will be described briefly to show what was developed on the issue of knowledge of the separate entities held by the various employees concerned.

The record shows that the appellant had issued to Rocky Mountain Wholesale Co., Inc., as obligee, its blanket position bond No. 133604. This corporation thereafter sold the larger portion of its assets to a new corporation having the similar name of Rocky Mountain Wholesale Co. The transfer of the assets to the new corporation appears to have been effective on April 1, 1963. The assets not so transferred by the seller went to another corporation, Jack Beaty, Inc. The insurance broker, the Clinton P. Anderson Agency, by letter dated April 9, 1963, transmitted the original bond (No. 133604) to the appellant bonding company's home office with the request that the bond be cancelled and reissued to Rocky Mountain Wholesale Co. and Rocky Mountain Wholesale Co. d/b/a Clovis Candy and Tobacco Company. This letter also advised the appellant bonding company as follows: "This is to advise that, effective April 1, 1963, the above-described insured will have ceased to do business here in New Mexico. The sale of the company was publicly announced to a Texas concern, and it was also stated that the management would remain the same." The "above-described insured" in this letter was Rocky Mountain Wholesale Company, Inc. The Clinton F. Anderson Agency was the local agent of the appellant and was located in Albuquerque, New Mexico, the principal place of business of the obligees on the bonds.

The letter transmitting the bond to the appellant was acknowledged by Mr. Beard of appellant's home office, who was then in the position of a trainee underwriter. This acknowledgment also requested a list of employees of the obligee. Mr. Roberts of the Anderson Agency responded to Mr. Beard's letter and requested that the "renewal" of the bond be in the name of Rocky Mountain Wholesale Company and Rocky Mountain Wholesale Company d/b/a Clovis Candy and Tobacco Company.

The record shows that Mr. Beard in the home office of appellant's company as a trainee apparently acted at different times both in appellant's fidelity and surety department and in its miscellaneous department. In this connection, he was directly under the supervision of Mr. Tramell, with whom he worked closely and with whom he had frequent contacts. He also worked in the fidelity "unit" which was under other supervisors.

During the time that the issuance of bond No. 143525 was pending at appellant's home office, it received a letter from Mr. Roberts of the Anderson Agency with regard to an existing cigarette tax bond which had been written for Rocky Mountain Wholesale Co., Inc., some time before. This letter addressed to Mr. Beard requested that a new bond be issued in the name of the new corporation. Mr. Tramell replied, thanking the

Anderson Agency for advice that the Rocky Mountain Wholesale Company had been sold and further stating that the appellant would not be able to change the entity on this bond until a financial statement "for the new concern" had been provided. Later Mr. Tramell acknowledged receipt of the financial statement "for the new entity" and advised Mr. Beutler of the Anderson Agency that they would not be able to write a tobacco tax bond for it.

By a letter dated June 5, 1963, the Anderson Agency advised Mr. Yates in the claim department of the appellant that an employee of Rocky Mountain Wholesale Co. had embezzled approximately $40,000.00 during the period June 1, 1962, through May 24, 1963. This was the loss which is the subject of appellee's claim and that of its codefendant. The contents of this letter were communicated to Mr. Beard.

An attempt was made to recoup some of the loss out of property owned by the embezzler, and in this connection the Anderson Agency arranged for the issuance of attachment bonds in connection with such proceedings. Mr. Stacks, an underwriter in the fidelity and surety department of appellant, arranged for the issuance of the attachment bond on advice from the Anderson Agency. This advice clearly described the separate entities involved, and that a portion of the loss was sought to be recovered by Jack Beaty, Inc., the successor to Rocky Mountain Wholesale Co., Inc., and the balance by Rocky Mountain Wholesale Co. The court found that Mr. Stacks knew that Mr. Beard was handling matters pertaining to the corporation and according to a file memorandum advised him he had authorized the two separate attachment bonds for the corporation.

During these problems Mr. Beard proceeded with the steps preparatory to the issuance of bond No. 143525 with coverage retroactive to April 1, 1963, and thus to a date prior to part of the embezzlement loss then known to all concerned. It was executed on behalf of the appellant by him on June 14, 1963, and by letter transmitted to the Anderson Agency. In this letter of transmittal he requested a résumé of the company's business activities and stated: "We feel that we should have this since there is a possibility that we will suffer a $25,000 loss on the previous bond." He also stated that bond No. 133604 had been cancelled. This new bond No. 143525 named as obligee the Rocky Mountain Wholesale Co., which was the name of the new corporation.

There is no issue as to who had knowledge of the embezzlement, as the appellant was so advised by letter to its claim department, the contents of which were made known to Mr. Beard before he signed and transmitted the bond. The above excerpt from his letter of transmittal demonstrates his knowledge.

Mr. Beard appeared as a witness and testified as described above that at all pertinent times he understood that the new bond No. 143525 was for the same company as had been covered by the previous bond, and that he did not know the two separate corporate entities existed. This is the mistake of fact relied on by appellant to limit its liability to the amount provided in the first bond.

The trial court found that the agent of the appellant, the Clinton P. Anderson Agency, knew at all material times that the appellee, Rocky Mountain Wholesale Co., was not the successor corporation to Rocky Mountain Wholesale Co., Inc., but that it was a separate and different corporation. The trial court further found that the fidelity and surety department of the appellant was advised by the Anderson Agency of the actual facts as to the separate corporate entities. By reason of this knowledge, the trial court found that the plaintiff was not mistaken as to any material fact at the time it issued bond No. 143525 with its retroactive effect to April 1, 1963. The trial court thus gave judgment on bond No. 143525 against the appellant in the amount of $15,400.00 which represented the fidelity loss incurred after April 1, 1963, by the new corporation.

The appellant urges that its Mr. Beard, in executing bond No. 143525, was acting under a mistake of fact, and that knowledge of other employees of appellant and the knowledge of employees of the Anderson Agency not directly concerned with the execution of the bond should not have been imputed to appellant in determining whether it was acting by mistake in executing the bond. The appellant points out that Mr. Roberts of the Anderson Agency and Mr. Beard of the appellant handled the correspondence and the negotiations relative to the issuance of the bond in question. It points out that Mr. Tramell, one of the appellant's supervisors, handled the issuance of the attachment bonds and he knew of the existence of the separate corporate entities, but he had no responsibility in the issuance of the fidelity bond. Appellant points out that Mr. Beutler of the Anderson Agency also knew of the separate entities as evidenced by his reports in connection with the attachment bonds and the cigarette tax bond, but that Mr. Stacks in appellant's fidelity and surety department was not involved in the issuance of the attachment bonds. Appellant argues that the knowledge of Messrs. Tramell, Beutler and Stacks cannot be imputed to the bonding company to render its issuance of the bond "advertent."

Appellant thus urges basically that knowledge is not imputed from agent to principal where the knowledge has come to an agent who has no authority to deal with a matter to which the knowledge pertains, and that this doctrine is applicable to the circumstances before us. Appellant relies upon an article by Professor Mechem in 7 Mich.L.Rev. 113.

In his article Professor Mechem stated that " * * * it is the duty of an agent to disclose to his principal all notice or knowledge which he may possess and which is necessary for the principal's protection or guidance." The author further states, as appellant quotes in his brief, that the rule applies to instances where " * * * the knowledge is possessed by an agent within the scope of whose authority the subject-matter lies." The rule does not apply to an agent employed for different and distinct transactions. There would seem to be no question but what this should be the standard applied. Restatement (Second), Agency, § 275; Sawyer v. Mid-Continent Petroleum Corp., 236 F.2d 518 (10th Cir.); Citizens Casualty Co. of N. Y. v. L. C. Jones Trucking Co., 238 F.2d 369 (10th Cir). The usual difficulty arises in its application to a particular set of facts. In the Sawyer case from New Mexico, supra, the knowledge acquired by the title examiner for a company acquiring an oil and gas lease was separated from the acts of company officials who later negotiated an additional agreement with the lessors. The court found there was no showing of a duty on the part of the title examiner to ascertain the lease drilling requirements and advise the corporate officers, and his knowledge was not imputed to the corporation. In the case before us the knowledge in question was instead possessed by employees of appellant whose duties included the writing of various types of bonds. Mr. Tramell who was in a supervisory capacity in the writing of attachment bonds had the knowledge, as did another senior employee, Mr. Stacks, who also handled the issuance of bonds in appellant's fidelity department which issued the bond in question. These two men were superiors of Mr. Beard who signed the bond. Appellant argues that there is no showing that the information possessed by these men was disclosed to Mr. Beard. However this would not seem to be the question; instead the issue is whether under these circumstances their knowledge is imputed to the corporation. These two men were in positions where their duties included the issuance and writing of attachment, tobacco, and fidelity bonds. The record shows they or one of them knew of the pending fidelity bond when they were handling other types of bonds covering the same or related obligees. Their work and authority was in an area so closely connected, and in fact including the issuance of bonds

578

of the type in question, that the trial court was correct in ruling as a matter of law that knowledge they possessed as to the separate corporate entities was imputed to appellant. Sawyer v. Mid-Continent Petroleum Corp., 236 F.2d 518 (10th Cir.). This is sufficient to decide the issues before us, and the knowledge possessed by the Anderson Agency need not be examined further.

Since the knowledge of its employees was imputed to appellant, bond No. 143525 was issued knowingly by appellant, no mistake of fact existed by reason of the constructive knowledge it possessed, and it was liable thereon as the trial court found.

Affirmed.