UNITED CRUDE MARKETING AND TRANSPORTATION COMPANY, a/k/a United Crude Company, a corporation, Appellee,

v.

ROBERT GORDON OIL CO., a corporation, Appellant.

No. 76936.

Court of Appeals of Oklahoma, Division No. 3.

May 12, 1992.

Richard James, Stroud, for appellant.

Graydon Dean Luthey, Jr., Tulsa, for appellee.

## OPINION

HUNTER, Judge:

Appellant, Gordon, appeals from the trial court's order granting summary judgment to Appellee, United, in the principal amount of $128,005.25, plus interest and attorney fees.

In 1982, United agreed to buy crude oil from certain leases Gordon operated in Lincoln County, Oklahoma. As a result of its own miscalculations, United overpaid Gordon $128,005.25 for oil in July, August, and September, 1982. Gordon admitted receipt of the overpayments, but alleged that it paid over to the other leasehold interest owners all but $42,164.15 of the money. Gordon did not learn that United had overpaid it until November, 1985, when United told it of the overpayment.[1]

---

1. The undisputed affidavit of Connie Shields, a Gordon employee, shows that Gordon paid all

but $42,164.15 to the other interest owners and

Gordon defended on the theory that it had detrimentally relied on United. Gordon paid out the money to others because it thought it was bound by law and contract to do so. Gordon also claimed the three year statute of limitations, 12 O.S.1991 § 95 Second, barred the action.[2] Gordon also asserted that the District Court of Tulsa County lacked jurisdiction because venue of United's action was in Lincoln County.

United claims that Gordon could not rely on the deposition of its President, Robert Gordon. United contends that Gordon did not meet the requirements of Rule 13, Rules for District Courts,[3] because it did not attach the pages of Robert Gordon's deposition to its response to United's motion for summary judgment.[4]

United also contends that the five year statute of limitations governing actions for breach of any contract of sale under the Uniform Commercial Code, 12A O.S.1991 § 2-725, applies to this action.[5] United asserts too that venue for its action properly lay in Tulsa County.

### ISSUES

I. Did the trial court err in holding that Gordon did not establish an issue of fact on its defense of detrimental reliance?

that it did not learn of United's overpayment until 1985.

**2.** 12 O.S. § 95 provides:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued and not afterwards:

\*   \*   \*   \*   \*   \*

Second. Within three (3) years: An action upon a contract express or implied not in writing ...

\*   \*   \*   \*   \*   \*

**3.** United relies primarily on the following language from Rule 13B:

... The adverse party shall attach to the statement [in opposition to the motion for summary judgment] affidavits and other materials containing facts that would be admissible in evidence, but the adverse party cannot rely on the allegations or denials in his pleading ...

II. Did the trial court correctly hold that the five year statute of limitations under 12A O.S.1991 § 2-725 applies to this action?

III. Did the trial court correctly hold that venue of the action lay in Tulsa County?

We answer yes to all three questions.

### I.

The record before the trial court established that Gordon paid out all but $42,165.15 of the amount United mistakenly paid it to other owners of the leasehold who Gordon believed were entitled to the money by law and contract.

The question of when one who pays by mistake is entitled to restitution from the one to whom he made the mistaken payment is comprehensively discussed in the ALR Annotation, *What constitutes change of position by payee so as to preclude recovery of payment made under mistake*, 40 ALR2d 993 (1951).

United's action depends for its success on proving that if Gordon is not required to repay the money it mistakenly paid Gordon, Gordon will be unjustly enriched. It was United's mistake that caused the overpayment. Gordon's obligation to correct United's own error is limited to having to repay to United amounts which if not repaid would unjustly enrich Gordon. ALR Annotation, Id.

**4.** In his deposition, Gordon's President, Robert Gordon, testified that he contacted the other interest owners after United told him that they had overpaid. Robert Gordon testified the other owners told him they didn't have the money to pay him back. Robert Gordon also testified that his counsel had advised him that the statute of limitations had run on any action to recover the money Gordon Oil paid by mistake to the other interest owners. In Gordon's response to United's motion for summary judgment, Gordon referred to the page and line number of the portions of Robert Gordon's deposition on which it relied. Gordon, however, did not attach the actual pages of the depositions to its response.

**5.** 12A O.S.1991 § 2-725

(1) An action for breach of any contract for sale must be commenced within five years after the cause of action has accrued....

\*   \*   \*   \*   \*   \*

Some cases have held that if the defendant shows only that he paid over the sum he received from plaintiff to a third party who would have been lawfully entitled to it had the payment been proper, defendant is relieved of liability from plaintiff for repayment of the money defendant paid to the third party. See, *Sawyer v. Mid–Continent Petroleum Corp.*, 236 F.2d 518 (10th Cir.1956); and ALR Annotation, Id., Later Case Service, 1992, Supplementing Vol. 40–41 ALR 2d. The annotator in the ALR Annotation states the rule:

> The defense of change of position is peculiarly applicable where the payee had a duty, imposed by law or by a collateral agreement, to pay over to a third party all or part of the funds which he was entitled to receive and, after receiving a payment made by mistake but assuming that it was properly paid to him, *he performed what he thought was his duty by turning over all or part of the receipts to such third party.* [Emphasis supplied.]

Id. 40 ALR2d at 1006.

In *Haubert v. Navajo Refining Co.*, 129 Okl. 195, 264 P. 151 (1928), the Supreme Court recognized the rule. *Haubert* might be interpreted to hold that the payee of monies improperly paid to it is insulated from liability to the payor where payee proves he paid over the funds to third parties because of a supposed duty. Were we to so hold here, Gordon would be entitled to judgment in his favor for all but the $42,164.15 he retained. Our analysis of the cases collected in the ALR Annotation, Id., convinces us that the Supreme Court did not intend to go so far.

In *Raccuglia v. Paine Weber, Inc.*, 180 Ga.App. 570, 349 S.E.2d 803 (1986), the Georgia Court of Appeals reversed the trial court's order granting summary judgment for a brokerage company. In *Raccuglia*, plaintiff broker mistakenly paid defendant investor on a brokerage account in investor's name. Investor's affidavit showed that the investor opened the account solely for the use of another person, and paid out the funds mistakenly paid to him according to the directions of the other person. The court held that, based on the investor's affidavit, it could not say as a matter of law that investor could not show prejudice that would diminish the broker's recovery.

We agree with the Georgia court's analysis in *Raccuglia.* The question of what efforts Gordon made to recover the funds from the third parties is for the trier of fact. We hold that Gordon sufficiently established its defense of detrimental reliance to avoid summary judgment. Gordon proved it paid the money it got from United to the other leasehold owners because it believed it was obliged to do so. This established that a fact issue existed concerning Gordon's detrimental reliance defense. Gordon did not have to prove what it had done to get the money back to defend against United's motion for summary judgment. Such proof was for the jury to consider.

We hold that the undisputed affidavit of Gordon's employee, Connie Shields, satisfied the requirements of Rule 13 and created a factual issue as to Gordon's detrimental reliance defense and whether Gordon would be prejudiced by having to repay to United monies it paid to others. We do not reach the issue of whether the trial court properly refused to consider the deposition testimony of Robert Gordon under Rule 13, Id. Under the record before us, whether Gordon was entitled to rely on the depositions in resisting United's motion for summary judgment is moot.

The trial court should have limited United's summary judgment to the $42,165.14 portion of the overpayment that Gordon admits it kept. Whether Gordon should be required to repay the balance of the money United paid it is a fact issue for a jury.

## II.

■ Whether the three year or five year statute of limitations applies here turns on whether United's action to recover money accidentally paid to Gordon is an action under its original contract to buy the oil, or is an unrelated action in assumpsit on a contract implied in law. We hold that this action was sufficiently related to United's

original contract to buy Gordon's oil to apply the five year statute of limitations.

The original oil purchase contract was governed by the UCC. Title 12A O.S.1991 § 2–107(1) provides that a "contract for the sale of minerals or the like, including oil and gas ... is a contract for the sale of goods within this article ..." Gordon concedes this point. Gordon argues, however, that United's cause of action was based on an *implied* contract. It therefore could not be based on a *written* contract. We disagree.

Gordon cites several cases holding that an action in assumpsit to enforce an obligation implied in law is not governed by the statute of limitations applicable to any underlying contract in writing. We observe that in none of Gordon's cases was the UCC in effect at the time the case was decided.[6] Gordon's authority is, therefore, not in point. For example, Gordon relies on a Texas opinion, *Hull v. Freedman*, Id., that holds an action in assumpsit was not based on the underlying written contract. After Texas enacted the UCC, however, several Texas opinions held, contrary to *Hull*, that the UCC statute of limitations preempts the general statute of limitations for contracts not in writing involving goods. See *Ideal Builders Hardware Co. v. Cross Construction Co.*, 491 S.W.2d 228 (Tex.Civ.App.—1st Dist. Houston 1973, no writ); *Wilson v. Browning Arms Co.*, 501 S.W.2d 705 (Tex.Civ.App.1973); and *Big. D Service Co. v. Climatrol Industries, Inc.*, 514 S.W.2d 148 (Tex.Civ.App.1974).

In a case similar to this one, the California Court of Appeals held that the longer UCC statute of limitations, § 2–725, applied in an assumpsit action to recover mistaken overpayments. *H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.*, 160 Cal.Rptr. 411, 99 Cal. App.3d 711, 27 U.C.C.Rep.Serv. 1312 (Cal.

App.1979). The court looked at § 1–201(3) of the UCC, which defines Agreement to mean "the bargain of the parties ... by implication from other circumstances ..." The California court then observed that § 2–725, the UCC statute of limitations, applies to the breach of "any contract." Because of the broad language of these two sections, the court held that the UCC statute of limitations governed implied in law contracts that arose in a commercial law setting.

In *Food Town v. Sigma Marketing System, Inc.*, 518 F.Supp. 485 (D.N.J.1980) the court held the UCC statute of limitations applied in a suit for refund of overcharges under a sales contract.

We hold the UCC statute of limitations should apply for another reason. An important purpose of the UCC is to achieve uniform treatment of claims by simplifying, clarifying and modernizing the law of commercial transactions, UCC § 1–102(1), (2)(a).[7]

We find *Russell Taylor*, Id., and *Food Town*, Id., persuasive and adopt their reasoning. In addition, this result serves to promote the purpose of clarifying and making uniform the rules for settling disputes between those who came together as the result of commercial transactions.

### III.

Gordon's principal place of business is in Lincoln County. United's offices are in Tulsa County. Gordon claims that venue of United's action is proper only in Lincoln County, and is improper in Tulsa County. Title 12 O.S.1991 § 134 provides that a domestic corporation may be sued "... in any county where the cause or some part thereof arose ..." Gordon contends that its contract with United was entered into in Lincoln County because it

---

6. *School Dist. No. 34, Carter County v. Joint School District No. 34, Love and Carter Counties*, 156 Okl. 5, 9 P.2d 771 (1932); *Thurlwell v. Rabbit*, 110 Okl. 285, 235 P. 923 (1924); *Chrysler Light & Power Co. v. Belfield*, 58 N.D. 33, 224 N.W. 871, 63 ALR 1337 (1929); *Hull v. Freedman*, 383 S.W.2d 236 (Tex.Civ.App.1964).

7. 12A O.S.1991 § 1–102(1), (2)(a) provides:

(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.
(2) Underlying purposes and policies of this Act are
(a) to simplify, clarify and modernize the law governing commercial transactions;

received United's checks there. The record reflects, however, that United's checks were mailed from Tulsa. Some part of United's cause of action, therefore, arose in Tulsa County. Venue was properly laid in Tulsa County under 12 O.S.1991 § 134. *Joe Walsh Advertising, Inc. v. Phillips Tire & Supply Co.*, 498 P.2d 1391 (Okl. 1972).

We AFFIRM the trial court's summary judgment against Gordon in the amount of $42,164.15. We REVERSE the balance of the trial court's summary judgment, including interest and attorney fees. We REMAND with DIRECTIONS to the trial court to grant Gordon's request for a jury trial on Gordon's detrimental reliance defense, and to hold a new hearing on the amount of attorney fees. Each party shall bear its own costs of this appeal.

HANSEN, V.C.J., and JONES, J., concur.