### In re M. S. FERSKO, Inc.
### Appeal of NEWMAN et al.

(Circuit Court of Appeals, Second Circuit. March 14, 1918.)

No. 165.

1. BANKRUPTCY ⬯63—ACTS OF BANKRUPTCY—FRAUDULENT TRANSFER OF PROPERTY.

The owner of the stock of a solvent mercantile corporation, who did not personally conduct its business, by selling its stock of goods and depositing the proceeds to his own personal credit in good faith, cannot be said as matter of law to have committed an act of bankruptcy on the part of the corporation, by transferring its property with intent to hinder, delay, or defraud its creditors, where he did not in fact know that there were any creditors, but had good reason to believe there were not.

2. BANKRUPTCY ⬯63—ACTS OF BANKRUPTCY—FRAUDULENT TRANSFER OF PROPERTY.

The knowledge of the active manager of the business that there were debts, which fact he concealed, cannot be imputed to the corporation, to make the act of the owner in transferring its assets to himself fraudulent, with which act the manager had nothing to do.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of M. S. Fersko, Incorporated, alleged bankrupt. From a decree dismissing the petition, L. Newman and others, petitioners, appeal. Affirmed.

Appeal from a decree of the District Court for the Southern District of New York (A. N. Hand, J., presiding), dismissing a petition for the adjudication of the respondent as a bankrupt. The cause originated in a petition filed on April 11, 1916, by one L. Newman, for the adjudication of the respondent, upon the ground, among others, of a conveyance in fraud of creditors. On May 24, 1916, the appellant filed a petition of intervention, which was followed by another petition on May 29, 1916, by the B. W. Jewelry Company, Incorporated. Upon answer of the bankrupt the cause was referred to a special master to report. Testimony at length was taken, and on December 28, 1916, the special master reported in favor of adjudication upon the ground that one Pezenik, president of the respondent, had made a fraudulent transfer under the Bankruptcy Act. The petitioner brought this on for confirmation before the District Court, which reversed the master and dismissed the petition on April 2, 1917. It is from this decree that the appeal is taken.

The bankrupt is a domestic corporation organized on October 7, 1915, to take over the business of one M. S. Fersko. Fersko had been through bankruptcy in 1915, and had arranged a composition with his creditors. In order to obtain the necessary cash, he had procured the assistance of one Pezenik, who advanced the necessary money. Pezenik, wishing to realize the amount which he had put in, having obtained by a conveyance from Fersko the property in question, in turn conveyed the same to the corporation in exchange for 998 shares of the 1,000 shares of stock of the corporation; each share of the par value of $5. Of the remaining 2 shares, Pezenik gave one to his father-in-law and one to Fersko's wife. He was engaged himself in the clothing business, and allowed Fersko, as treasurer, to have actual conduct of all the affairs of the company, the general purpose of which was to realize upon Fersko's stock, which had been so turned over, and to repay Pezenik his advances. On February 29, 1916, Pezenik called in one Tisch, an auctioneer, and sold him all the merchandise of the respondent for the sum of $6,750. This was paid in two checks, one of $6,650, and the other of $100, which were taken and collected by Pezenik and deposited in his personal account. There remained as assets fixtures variously estimated as worth between $300 and $400, and a bank account of only $3.72. In April, 1916, Fersko and Pezenik had become on bad terms, and it was during that month that the first petition was filed. One of the questions mooted was whether Fersko had fraudulently instigated the filing of the petition.

Fersko swore that in December, 1915, he bought a number of diamonds of odd sizes, known in the trade as a "mélée," from one Sass, a previous acquaintance. Sass had himself been through bankruptcy, and at that time, with his wife, was doing business as a corporation under the name of Victoria Diamond Company, Incorporated, in buying and selling jewelry. For the purchase so made, Fersko and Sass swore that Fersko executed five notes, of the aggregate amount of $1,188.95, which remained unpaid at the time of the filing of the petition. The claim of the petitioner, Newman, depended upon an assignment of $500 of this amount made just before the petition was filed. The claim of the B. W. Jewelry Company was for $288 for jewelry purchased by Fersko on the 18th day of December, 1915. There was other indebtedness, which brought the total indebtedness of the company up to the neighborhood of $2,000.

Pezenik denied that he had any knowledge of either of these debts. He swore that on February 29th, when he was about to sell the property to Tisch, Tisch had asked Fersko, who was present at the interview, whether the corporation owed any indebtedness, and Fersko had said there was none, except some scattering claims, which he had ample means to pay. Tisch swore to the same conversation, and they were corroborated by three other witnesses,

although Fersko denied it. On the other hand, Sass swore that, about a month after he had made the sale to Fersko, he had a talk with Pezenik, who said that he was responsible for the goods that Fersko had purchased, and that his (Sass') money was safe. When, however, the first of the five notes became due on April 10, 1916, Sass made no effort to collect the same from Pezenik, and had no interview with him, but after some interviews with Fersko filed the petition through Newman. Sass and Fersko had been in business relations before, and Fersko swore that in his petition for bankruptcy he had inserted the name of Sass in his list of creditors, although he was not at that time a creditor, with the idea that it might be necessary to obtain Sass' consent to a composition, although he was not to receive any part of the dividend.

The petitioner's theory was that, although the sale to Tisch was not fraudulent, as it was not shown that the sale was for an inadequate consideration, Pezenik's deposit of the checks in his own account was necessarily a conveyance in fraud of creditors, first, because Pezenik knew of the existing indebtedness, and, second, if he did not, because it was at best a voluntary conveyance which resulted in insolvency.

David Haar, of New York City, for appellants.
David C. Myers, of New York City, for respondent.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). We think it beyond question that Pezenik had no knowledge of the debt incurred by Fersko, assuming that there was any such debt at all, as to which we do not find it necessary to come to any conclusion. Fersko was certainly a most unreliable witness, and there is no inherent improbability in his having kept the matter from Pezenik. It was no proper part of the business to buy jewelry, for Pezenik had employed Fersko only to dispose of the stock. Pezenik had his own affairs to attend to, and seldom came to the shop; there was no antecedent probability that he should know of the transaction. It is true that Sass swears that he spoke to him about it, and of course Fersko also swears to the same effect, and it is perhaps also true that Pezenik did not directly deny the conversation with Sass. But he was not questioned about it, and the interview of February 29th is so well corroborated as to leave no doubt in our minds that it took place as stated. At that time Fersko said that there was no substantial indebtedness and at other times he made statements to two other persons inconsistent with the idea that he had bought the mêlée.

It is hardly possible that both Fersko and Pezenik were at that time engaged in a plan to defraud the creditors of the corporation—the only conceivable theory which could account for the interview of February 29, 1916. Sass and Fersko did not quarrel at any time, but throughout appear in close and harmonious relations, if nothing more. Moreover, Pezenik's disposition of the fund is wholly inconsistent with any such fraudulent plan; if he had intended to defraud Sass or the B. W. Jewelry Company, he would have secreted the funds more effectively than by simply depositing them in his bank account. The corporation was solvent three times over and more, and there would have been no possible purpose in trying to evade payment by such futile scheme. We conclude, therefore, with the District Judge, that the

evidence shows beyond question that Pezenik had no knowledge of any indebtedness, other than as Fersko stated it on the 29th of February, and that his purpose was to close out the business honestly and put the proceeds out of Fersko's power.

[1] The question, then, resolves itself into one of law. Was the conveyance, innocent in itself, a fraud, regardless of Pezenik's intent, because his transfer to himself was voluntary? and second, if it was not fraudulent as matter of law, may Fersko's knowledge of the debt be imputed to the corporation in such wise as to make the conveyance fraudulent, irrespective of Pezenik's own personal knowledge? The District Judge thought that the transfer from the corporation's account to Pezenik's was not a transfer within the statute of Elizabeth at all. We pass the consideration of that point, because we are satisfied that, even though it be regarded as a sufficient transfer, there was not the requisite intent. It is quite true that the interpretation of the statute of Elizabeth has not been in strict accordance with its wording. The creditor need not show a specific intent in the same sense that it must be shown in prosecution for murder or larceny. And so, for example, it is generally held that the voluntary transfer of enough property to leave the donor insolvent is within the statute, no matter what his specific or personal intent may be (Cole v. Tyler, 65 N. Y. 74), even though a voluntary transfer is not void ipso facto when the donor be indebted (Lloyd v. Fulton, 91 U. S. 479, 23 L. Ed. 363; Seward v. Jackson, 8 Cow. [N. Y.] 406). Indeed the last has long been the statutory law in New York. Personal Property Law (Consol. Laws, c. 41) § 38.

Yet, however little the courts may observe the requirement of a specific intent, they do require some intent to be proved as a fact (Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008), and by the greatest extension it cannot be supposed that a man intends to hinder creditors of whose existence he is in ignorance. The strictest rule can go no further than the usual rule of civil liability, under which an actor is charged with such consequences only as would reasonably be thought to follow upon his act. Here Pezenik had heard Tisch inquire of Fersko, the only person who could be expected to know, and Fersko had assured him that there were no debts beyond what the respondent could easily pay with what was left. By no possible test can Pezenik be charged with an intent under the statute.

[2] In order to charge the respondent, we must therefore resort to Fersko's own knowledge. It is urged that, since he was the treasurer, his knowledge must be imputed to the respondent, and that with that knowledge the transfer was necessarily fraudulent. Fersko's knowledge would, of course, be chargeable to the respondent in all matters performed by him over which his authority extended; but he had no authority to transfer the assets, and did not assume to do so. His knowledge acquired independently cannot be tacked to Pezenik's in an enterprise with which he had nothing whatever to do and Pezenik everything. Blackburn v. Vigors, L. R. 12 App. Cas. 531; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Allen v. Rostain, 11 Serg. & R. 362, seems in fact to depend upon the same principle, though it is not clear that

the court so intended. General Ins. Co. v. Ruggles, 12 Wheat. 408, 418, 6 L. Ed. 674, contains language to the same effect, though perhaps the court meant to go chiefly upon the theory that the master's authority ended with the loss of the ship.

But, regardless of this, Fersko, at the time when Tisch asked him whether there were any debts, for some private purpose saw fit deceitfully to suppress the facts. His knowledge while in the execution of that purpose may not be imputed to the respondent by well-settled rules. American Nat. Bank v. Miller, 229 U. S. 517, 33 Sup. Ct. 883, 57 L. Ed. 1310.

The result of our decision does not, of course, involve the conclusion that the transfer is valid as against any creditor, should Pezenik later change his mind as to his offer upon these proceedings to pay all debts lawfully proved. The payment was made under a mistake of fact, if Sass has any claim at all, which is open to doubt, and it could be recovered by the respondent, or by its creditors after judgment. Besides this, the statutes of New York, such as section 28 of the Stock Corporation Law (Consol. Laws, c. 59), may give independent relief. These considerations are irrelevant to a case necessarily depending upon a fraudulent conveyance. The only fraud which we can find was that of Fersko, whose whole connection with these proceedings was at best open to the gravest suspicion, and who certainly instigated Sass to file the petition.

The decree dismissing the petitions is affirmed, with costs.