**BURKE et al. v. UNITED STATES.**

No. 45611.

Court of Claims.
Oct. 7, 1946.

Archie K. Shipe, of Washington, D. C. (Walter M. Bastian, of Washington, D. C., on the brief), for plaintiff.

H. L. Godfrey, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen. (John B. Miller and J. F. Mothershead, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and WHITAKER, JONES, LITTLETON, and MADDEN, Judges.

WHITAKER, Judge.

This is a suit by the administrators of the estate of Alexander M. Bunn and William E. Richardson to recover just compensation for the alleged taking of their interests in patents issued on the "M-1 rifle," used by the United States Army and Marine Corps.

Bunn and Richardson were attorneys at law. On August 11, 1919 they entered into a contract with John C. Garand, the inventor of this rifle, under the terms of which Garand contracted to compensate each of the attorneys to the extent of 5 percent of any proceeds up to $100,000 and 33⅓ percent of any proceeds above $100,000 realized by him from the assignment, sale or license of any patent which he might obtain on any of his inventions pertaining to machine or automatic guns or rifles or other firearms during the life of the contract. The attorneys were to use their best efforts to secure patents on any of his inventions, to protect the same from interference or infringement, and to promote a sale or other disposition thereof to the best advantage of the parties interested in them. It was further agreed "that any of the parties shall arrange for a sale, but none of the parties hereto may sell or dispose of their interest in the said inventions and

discoveries except by the concurrence of two of the three parties hereto."

Plaintiffs allege that this contract gave them a vested equitable interest in the patents thereafter obtained by Garand, and that the later acceptance by the defendant of assignments by him of the whole right, title and interest in the patents and the recording of the assignments constituted a taking of their interests, for which the defendant is required to pay them just compensation.

The pertinent facts in connection with the invention, the patenting thereof and the assignment of the patent to the United States, and plaintiffs' dealings with defendant with respect thereto are as follows.

Prior to August 16, 1918 Garand had only partially completed the embodiment of his conception of an automatic rifle. On this day, at the instance of John T. Kewish, with whom he had a working arrangement for the perfection of this rifle, he was employed by the Bureau of Standards to complete its construction. It was completed in December 1918, but failed to function satisfactorily. He continued to work on it as an employee of the Bureau of Standards and by April 5, 1919 had perfected a model which did operate successfully.

Shortly after the perfection of this model, to wit, on April 26, 1919, Garand, at the instance of Captain Kopper, who was the liaison officer between the office of the Chief of Staff of the Army and the Bureau of Standards, filled out a mimeographed form entitled "Record of Military Invention," in which under the heading "Rights of United States Government" it was provided, "to take out the complete patent and to manufacture and use for Government purposes only, all domestic, commercial and foreign rights reserved to inventor." This document was signed by Garand as inventor and by Captain Kopper as "forwarding officer," and was delivered to the Patent Section of the War Department.

Following this, on July 11, 1919, Garand filed a patent application on this invention, but this application was rejected for want of prosecution, and thereafter was abandoned. But on September 5, 1919 Garand filed a second application for patent on this

invention. This was forwarded to the Patent Office by Major D. H. Decker of the Ordnance Department of the War Department. This application matured into a patent on October 19, 1926.

In the meantime, Garand had severed his connection with the Bureau of Standards on October 22, 1919, and had entered the employ of the Ordnance Department at the Springfield Armory, Springfield, Massachusetts, on November 4, 1919, for the purpose of continuing work on the development of automatic rifles.

In 1926 the Springfield Armory was directed to undertake to perfect a so-called "gas-actuated" gun. Garand was directed to discontinue his work on his original invention, which was a primer-actuated gun, and to start work on a "gas-actuated" gun. In such a gun the mechanism was operated by trapping at the muzzle a part of the gas in the barrel and applying this gas pressure to a piston. Such a gun was finally perfected, and in 1929, 1930, 1931 and 1932 Garand filed applications for patents on the gun and appurtenances thereto. These applications later matured into patents.

Immediately prior to filing applications for all of the above patents, except one, Garand executed to the United States Government license agreements reading in part as follows: "* * * I hearby grant to the Secretary of War of the United States of America and to his successors in office the right and license (non-exclusive) to make, use and sell and to cause to be made, used and sold, for the Government of the United States of America, the subject matter of said invention * * *, reserving to myself unrestricted possession and enjoyment of all other rights not hereby expressly granted to the Government of the United States of America."

The last patent, one on a cartridge clip, Garand assigned to the United States, but reserved to himself an irrevocable and assignable license.

Subsequently, on January 20, 1936, Garand, without the knowledge or consent of either Bunn or Richardson, executed to the United States the following assignment:

"Whereas, by reason of the character of my employment by the Government of the

United States, at Springfield Armory, all right, title and interest in and to said inventions and in and to the patents that have or that hereafter may issue thereon resides in the said Government.

"Now, therefore, I, John C. Garand, by these presents do sell, assign, and transfer unto the said Government of the United States of America, as represented by the Secretary of War, and his successors in office, the whole right, title, and interest in and to the said inventions and in and to the letters patent and applications for letters patent therefor aforesaid; the same to be held and enjoyed by the said Government of the United States of America, to the full end of the terms, for which said letters patent are or letters patent may be granted, as fully and entirely as the same would have been held by me had this assignment not been made."

This assignment was recorded in the Patent Office on July 9, 1936.

After January 20, 1936, Garand, in the years 1938 and 1939, filed applications for patents on other inventions connected with an automatic rifle, and immediately assigned any patents to be issued thereunder to the United States Government.

These assignments, plaintiffs say, were in violation of their rights under the contract of August 11, 1919, and constituted a taking thereof by the Government of the United States.

■ If the defendant took the assignments from Garand in ignorance of plaintiffs' rights, it incurred no liability to them. Being ignorant of plaintiffs' rights, a promise to pay them compensation therefor cannot be implied from its acceptance of assignments from Garand. Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162.

■ The record clearly indicates that when the officers of the Ordnance branch of the War Department took the assignments from Garand in 1936 they had no actual knowledge of the fact that the plaintiffs had any interest therein. As the findings show, shortly before the trial of this case a careful search was made of the files of the War Department and no record could be found of the filing of this agreement between plaintiffs and Garand prior to April 23, 1936, which was some four months after the assignment by Garand to the Secretary of War. The search of the files included those in the Ordnance Department, the Adjutant General's Office, the Office of the Chief of Staff, the Judge Advocate General's Office, and the Office of the Secretary of War, both the current files and also those in the Archives. Apparently this agreement was never made a part of the official files. Furthermore, the fact that the War Department asked Garand for a copy of it when it received Judge Richardson's letter of April 23, 1936 referring to the agreement, indicates they had no previous knowledge of it.

We are of opinion that the assignments from Garand were taken in actual ignorance of plaintiffs' rights.

Not only were they actually ignorant of the agreement, neither was there anything to charge them with knowledge of it.

The agreement of August 11, 1919 was not recorded in the Patent Office. About five years after its execution and long before the assignments plaintiffs undertook to record it, but this was refused because it was held to be an assignment of an interest in a patent but not an assignment of the patent itself, and, hence, not recordable under the regulations of the Patent Office.

Plaintiff Richardson, however, testified that he notified two officers in the Office of the Chief of Staff of the United States Army, a Major Gray and a Colonel Dougherty, of the contents of the contract between him and Bunn and Garand, and plaintiffs say this was notice to the defendant. He says that he first left with Major Gray a copy of this contract, and later he left a copy with Colonel Dougherty.

■ Judge Richardson's testimony about this is not altogether satisfactory, but we accept it as true. Even so, we are of opinion that this was not sufficient to charge defendant with notice of plaintiffs' rights. Knowledge acquired by one agent of a principal will not be imputed to the principal in a subsequent transaction negotiated by another agent unless it was the duty of the agent to transmit the knowledge to his

principal. Restatement of the Law of Agency, sec. 275; Fletcher Cyclopedia Corporations, sec. 807; Home Savings & State Bank v. Peoria Agricultural & Trotting Society, 206 Ill. 9, 69 N.E. 17, 19 Am. St.Rep. 132; Van Dyke's Food Store v. Independent Coal & Coke Co., 84 Utah 95, 34 P.2d 706; Hunter v. Hunter et al., 327 Mo. 817, 39 S.W.2d 359; Irvine v. Grady, 85 Tex. 120, 19 S.W. 1028.

In 1919, when Judge Richardson left copies of this contract with these gentlemen, there were in the United States Army thousands of officers. Many of them were temporary officers. Their duties were many and varied. Some were connected with the conduct of military campaigns in the field; some had to do with the purchase of food and clothing; others with the purchase of ordnance; others with the transportation of supplies; others with the gathering of military intelligence; others with the patenting of inventions of military value, etc., etc., etc. Notice to one of these officers of some fact relating to a branch with which he was not connected is not and should not be notice to the department, binding on it in future transactions.

Not only is this so, but notice to an officer of the War Department given in 1919 is not sufficient to bind the Department in a transaction in 1936, seventeen years later, unless there was a duty on the officer receiving the notice to make a record of the fact of which notice was given in such way as to bring it to the attention of the officers in later years who might be called upon to deal with the matter. Cf. Restatement of the Law of Agency, sec. 276b. Irvine v. Grady, supra; In re M. S. Fersko, Inc., 2 Cir., 250 F. 357; In re Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167. See Notice, 73 A.L.R. 420 et seq.

There is no proof that there was any such duty on either Gray or Dougherty. All the inferences are to the contrary. The War Department had notified Garand that it did not desire to purchase his remaining rights in the patent and, therefore, from then on it was of no interest to the War Department what parties were interested with him therein; and, hence, no duty rested upon Gray and Dougherty to make a record of plaintiffs' interest.

As a matter of fact, copies of this agreement were not furnished Major Gray and Colonel Dougherty for the purpose of putting the War Department on notice of plaintiffs' rights in the patents; it was furnished them merely as an explanation of why plaintiffs, as Garand's attorneys, were unwilling to entertain the Government's offer for the purchase of Garand's reserved rights in the patents. Not having been furnished them for the purpose of putting the War Department on notice of plaintiffs' rights, these officers saw no occasion for filing it in the official files of the department. At any rate, it is fairly clear that they did not do so and the purpose for which it was furnished is a sufficient explanation of their omission to do so, even if any duty rested upon them, in any event, to do so. Had plaintiffs desired to put the War Department on notice of their rights, it was only necessary, as they well knew, to address a letter to the Secretary of War acquainting him with their rights. This they did not do.

On April 23, 1936, after Garand had given the Government the above-mentioned assignment, but before it had been recorded, Richardson wrote the defendant a letter in which he referred to the contract between him and Bunn and Garand, and stated that he had been approached by a party interested in acquiring rights under the patents, and in which he inquired whether or not the Department was still uninterested in purchasing Garand's reserve rights therein. This letter was addressed to the Secretary of War. It is the first official notice of the War Department of the existence of the contract between Richardson and Bunn and Garand.

We are of opinion that plaintiffs' proof, that they filed with Major Gray and Colonel Dougherty copies of this agreement, is insufficient to show the defendant had notice thereof.

After receipt of Judge Richardson's letter the War Department registered the assignment from Garand to it, but this could not give rise to an implied promise to pay the plaintiffs compensation for the

taking of their interests in the patents because at the time the assignment was recorded the defendant held the patents under a claim of right arising from the assignment by Garand. Langford v. United States, 101 U.S. 341, 345, 25 L.Ed. 1010; Hill v. United States, 149 U.S. 593, 598, 599, 13 S.Ct. 1011, 37 L.Ed. 862; Tempel v. United States, supra; United States v. Minnesota Mutual Investment Company, 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911. The registration of the assignment was not an acquisition of any rights in the patents; it was merely notice of rights already acquired.

Inasmuch as we are of the opinion that the defendant is not liable for the taking of plaintiffs' interest in the patents, if any, for the want of notice of those rights, we do not decide whether or not plaintiffs' contract with Garand gave them an interest in the patents, for the taking of which the defendant would have been obligated to pay them just compensation.

Plaintiffs' petition will be dismissed. It is so ordered.

JONES and LITTLETON, Judges, and WHALEY, Chief Justice, concur.

MADDEN, Judge, took no part in the decision of this case.