**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**CURRENCY TOTALLING $48,318.08,**
**Defendant,**

**Philip A. DeMassa, Intervenor-Appellant.**

No. 77–2513.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1980.

Rehearing and Rehearing En Banc
Denied Feb. 13, 1980.

Philip A. DeMassa, pro se.

Stuart Lansing Smits, San Diego, Cal., for intervenor-appellant.

Arthur R. Amdur, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.

CHARLES CLARK, Circuit Judge:

In this civil forfeiture proceeding, the district court denied an assignment claimant standing to sue because (1) the assignment was executed after the seizure of the res, (2) the assignment failed for lack of consideration, and (3) the form of the assignment did not comply with the Assignment of Claims Act, 31 U.S.C. § 203. We affirm the judgment, but on different grounds.

On December 12, 1976, Alejandro Renteria Ruiz, a/k/a Valentine Valencia Ornelas, crossed the Laredo International Bridge from the Republic of Mexico in a 1971 Ford Mustang driven by a Mexican national, Juan Henaine. A search of the vehicle disclosed approximately 72 grams of marijuana and 2 grams of hashish. Further inspections revealed currency totalling $48,318.08 contained in various panels of the automobile. Ruiz was arrested and subsequently was indicted on one count of knowingly and intentionally importing a controlled substance into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and on one count of knowingly and willfully transporting currency in excess of $5,000.00 into the United States without having filed the requisite report, in violation of 31 U.S.C. §§ 1058, 1101.

During the week after his arrest, Ruiz and several of his relatives telephoned Philip A. DeMassa, the intervenor in this action, requesting that he undertake to represent Ruiz in all future matters. Ruiz agreed to pay DeMassa a retainer if he would proceed from San Diego to Laredo and meet with him. The retainer took the form of an oral assignment of $35,300.00 of the seized currency. A formal written document titled "Assignment of Seized Funds" was executed on December 27, 1976.

On that date, DeMassa attempted to serve notice of the assignment on the United States. The record, as clarified by counsel at oral argument, shows that DeMassa attempted to serve a copy of the written assignment on Customs Agent Best, the supervisor then on duty at Laredo. Best refused to accept service of the assignment on behalf of Customs. He also refused to acknowledge in writing that he had received the assignment copy. DeMassa left a copy of the assignment with Best. Notwithstanding Best's refusals, DeMassa took no further action to perfect his interest in the seized currency.

On January 7, 1977, Ruiz, represented by Gerald H. Goldstein as retained counsel, pled guilty to violating the currency-reporting requirements contained at 31 U.S.C. § 1101.[1] Additionally, Ruiz and his counsel expressly waived any objection to a subsequent forfeiture of the seized currency. The government, in exchange for Ruiz's guilty plea and express waiver, recommended a sentence of time served on the currency violation and agreed to nol pros the drug importation charge. Subsequently, the government chose to seek forfeiture of the seized currency. DeMassa intervened and asserted his assigned interest in $35,300.00 of the currency.

The district court granted the government's motion for summary judgment, finding as a matter of law that DeMassa was without standing to contest the forfeiture. The government contends the district court correctly found that the doctrine of relation back operates to deprive DeMassa of standing to challenge the forfeiture because DeMassa's rights as assignee arose after both the commission of the act giving rise to the currency-reporting

[1.] DeMassa did not at any time act as counsel for Ruiz in connection with the criminal

charges arising from the December 12, 1976, transactions.

violation and the resulting seizure. The government relies on *United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890). There, the Supreme Court held that:

> [W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed, and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.

*Id.* at 17–18, 10 S.Ct. at 247, 33 L.Ed. at 559. This Court has relied on *Stowell* in applying the doctrine of relation back in civil forfeiture proceedings. *See United States v. One 1967 Crist-Craft 27 Foot Fiber Glass Boat,* 423 F.2d 1293, 1294 (5th Cir. 1970); *Florida Dealers & Growers Bank v. United States,* 279 F.2d 673, 676 (5th Cir. 1960). *See also Wingo v. United States,* 266 F.2d 421, 423 (5th Cir. 1959). However, the doctrine of relation back cannot properly be applied in the instant case. In *Stowell,* as well as in its Fifth Circuit progeny, the statute underlying forfeiture was mandatory, requiring that upon the occurrence of specified acts certain property "shall be forfeited to the United States." *See* 133 U.S. at 3 n.1, 10 S.Ct. at 244 n.1, 33 L.Ed. at 556 n.1; 26 U.S.C. § 7301. Here, the underlying statute is permissive, providing only that currency transported in violation of the § 1101 reporting requirement is "subject to seizure and forfeiture to the United States." 31 U.S.C. § 1102(a). The doctrine of relation back as announced in *Stowell* does not apply where the statute provides only for a possibility of subsequent forfeiture.

■ The government next contends the district court correctly found that DeMassa is without standing to challenge the forfeiture because of his failure to comply with the Assignment of Claims Act, 31 U.S.C. § 203. That section applies only to assignments of "any claim upon the United States." It does not apply where, as here, the assignment was not of a claim upon the United States, but of an interest in property adverse to the interest held by the United States. *See United States v. $22,993.00 in Currency,* 332 F.Supp. 1277, 1279 (E.D. La.1971).

■ Additionally, the government argues the district court correctly determined that DeMassa is without standing to challenge the forfeiture because the underlying assignment was void for lack of adequate consideration. The general rule is that an assignment is not ineffective because it is voidable by the assignor for lack of consideration. Restatement of Contracts § 150(2) (1932). However, we need not determine whether that rule is applicable here. The written assignment recites that Ruiz assigned his interest in the seized currency in exchange for DeMassa's past, present, and future legal services. Although a factual dispute exists as to whether DeMassa ever rendered legal services on behalf of Ruiz, he clearly is obligated under the assignment to do so should Ruiz require such services. His current promise to render such services is adequate consideration to support the assignment. *See id.* §§ 75–84; 1 S. Williston, A Treatise on the Law of Contracts §§ 102–03, 115 (3d ed. W. Jaeger ed. 1957). In sum, we disagree with all of the reasons assigned by the district court for the judgment entered denying standing to DeMassa.

The legal issues presented on this appeal arise from the assignment from one private party to another of some interest in certain property. The exact nature of the assignee's interest must be determined first, as against all parties at the time of the assignment, and second, as against prior adverse claimants such as the United States at the time of perfection. The application of basic principles of contract and agency law resolve the issues.

■ The language of the written assignment shows that Ruiz assigned all of his rights, title, and interest in $35,300.00 of

the seized currency to DeMassa. However, DeMassa took only the right, title, and interest to the currency that Ruiz possessed at the time of the assignment. *See, e. g., Florida Bahamas Lines, Ltd., v. Steel Barge "Star 800" of Nassau,* 433 F.2d 1243, 1246 (5th Cir. 1970); *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency,* 454 F.Supp. 376, 381 (M.D.Fla.1978). The right, title, and interest conveyed by the assignment are twofold: first, an ownership interest in currency previously seized by, currently possessed by, and potentially forfeitable to the United States;[2] and second, a right to assert those defenses to forfeiture that were available to Ruiz at the time of the assignment. DeMassa's right, title, and interest obtained at the time of the assignment clearly are sufficient to provide standing at the subsequent civil proceeding to contest forfeiture. The decisive issue is whether DeMassa perfected his assigned interest in the seized currency by giving notice of the assignment to the United States.

The record shows on January 7, 1977, that plea-bargaining negotiations resulted in Ruiz entering a guilty plea to the underlying currency violation and expressly waiving any objection to a subsequent civil forfeiture of the seized currency. If DeMassa perfected his right, title, and interest in the seized currency by serving notice of the assignment on the United States before Ruiz's guilty plea and express waiver, the United States cannot now bind DeMassa by adverse actions of his assignor taken after the perfection of DeMassa's assigned interest. However, if DeMassa failed to perfect his right, title, and interest prior to Ruiz's guilty plea and express waiver and effectively allowed the United States to deal with Ruiz as the owner of the seized currency, then DeMassa's assignee position, when later perfected by intervention, was subject to the additional impediments raised by Ruiz's subsequent actions.

DeMassa argues that by attempting to serve a copy of the written assignment on and leaving a copy of the assignment with Customs Agent Best, he served notice of the assignment on the United States. He thus contends that he perfected his assigned interest in the seized currency on December 27, 1976.

■ Courts long ago acknowledged the difficulty inherent in notifying the United States of an interest or claim adverse to that held or asserted by the sovereign in order to bind it and its many departments and agents in future transactions. *See, e. g., Burke v. United States,* 67 F.Supp. 827, 829–30, 107 Ct.Cl. 106 (1946). This difficulty is severe where the attempted notification takes the form of service on a single agent of the United States. *See id.* at 830. The United States, as sovereign, is a unique entity with numerous agents, each having varied duties and responsibilities. Neither the legislative nor executive branches of the government has designated a specific individual or office to receive notice of claims or interests adverse to the United States of the type here involved. In such circumstances, notification given to a single agent of the United States will constitute notice to the United States only where a strict application of the established principles of agency requires that result.

DeMassa does not contend the United States endowed Best with actual authority to receive notice of the assignment. *See generally* Restatement (Second) of Agency §§ 7, 268(1)(a) (1958). Neither does he contend that the United States through some outward manifestation clothed Best with apparent authority to receive such notice. *See generally id.* §§ 8, 268(1)(b). Rather, DeMassa argues that, because Best's duties had some connection with the subject matter to which the notification related, notice to Best constituted notice to the United States. *See generally id.* § 268(1)(c). This argument is without merit.

■ A principal is not bound by a notification directed toward an agent whose

---

2. The title of the written assignment, "Assignment of Seized Currency," evidences DeMassa's knowledge of the United States' prior interest in the res.

duties or apparent duties are connected with the subject matter to which the notification relates unless the notification is "given to one who has, or appears to have, authority in connection to it, either to receive it, to take action upon it, or to inform the principal or some other agent who has duties in regard to it." *Id.* § 268, Comment c, at 585. A principal similarly is not bound by a notification directed toward such an agent if "the one giving the notification has notice that the agent is not authorized to receive it." *Id.* § 268(1)(c) at 582. As previously discussed, DeMassa does not contend that Best had either actual or apparent authority in connection with the notification itself. Moreover, Best refused to accept or acknowledge receipt of the assignment. These actions, which were consistent with Best's lack of actual or apparent authority to receive notice of the assignment, were sufficient to apprise DeMassa that Best lacked authority to receive notice on behalf of the sovereign. Best's lack of actual or apparent authority in connection with the notification and DeMassa's constructive notice thereof effectively negate DeMassa's claim that Best's supervisory duties with the Customs Service made notice to Best notice to the United States.

■ However, DeMassa contends that Agent Best's actual knowledge of the assignment on December 27, 1976, constitutes knowledge of the assignment on the part of the United States and serves to perfect his assignee interest in the seized currency. We reject this contention. In general, a principal is affected by an agent's knowledge of a matter where it is the agent's duty to give such information to the principal. *See generally id.* §§ 272, 275. However, "[t]he agent must have a duty to reveal the information which he has. It is not enough that the agent has a duty in relation to the subject matter." *Id.* § 275, Comment c, at 599. DeMassa failed to

prove that Agent Best had a duty to reveal his knowledge of the assignment. Accordingly, the United States was unaffected by Best's actual knowledge of the assignment on December 27, 1976.

■ Because neither DeMassa's attempted service of notice of the assignment on Best nor Best's actual knowledge of the assignment constitutes notice or knowledge of the assignment on the part of the United States and because DeMassa failed to take any additional steps to perfect his assignee position before Ruiz's guilty plea and express waiver on January 7, 1977, DeMassa's original right, title, and interest in the seized currency became subject to the additional impediments raised by Ruiz's actions. Those impediments, a guilty plea to the underlying substantive charge and an express waiver of any objection to a future civil forfeiture of the currency, deprive DeMassa of a sufficient interest in the seized res to contest its forfeiture. The district court correctly granted the motion of the United States for summary judgment.[3]

■ DeMassa argues that because only those transportations of monetary instruments involving currency in excess of $5,000.00 are subject to the § 1101 reporting requirement, the initial $5,000.00 in seized currency is exempted from a § 1102 forfeiture. We reject this argument. The statutory language is clear:

*Any* monetary instruments which are in the process of *any* transportation with respect to which *any* report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements *are subject to seizure and forfeiture to the United States.*

31 U.S.C. § 1102(a) (emphasis added). The statute clearly permits the forfeiture of the entire amount of monetary instruments

---

**3.** We do not have to decide and expressly pretermit whether the government's reliance on Ruiz's guilty plea would have sufficed to prove the knowing transportation of monetary instruments required by § 1101 had DeMassa perfected his right, title, and interest in the currency

prior to January 7, 1977. *See generally United States v. Warren,* 578 F.2d 1058 (5th Cir. 1978); *United States v. Schuaiderman,* 568 F.2d 1208 (5th Cir. 1978); *United States v. Granda,* 565 F.2d 922 (5th Cir. 1978).

that are transported in violation of § 1101. *See United States v. One 1964 MG,* 584 F.2d 889, 890–91 (9th Cir. 1978); *Ivers v. United States,* 581 F.2d 1362, 1373–74 (9th Cir. 1978); *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency,* 454 F.Supp. at 382–83.

The judgment of the district court is AFFIRMED.