**UNITED STATES of America, Plaintiff,**

**v.**

**$173,081.04 IN U.S. CURRENCY and One Personal Check Drawn by Jaime Buendia In the Amount of $21,128.00, Defendants.**

**No. EP–86–CA–136.**

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 9, 1987.

Mark Greenberg, Asst. U.S. Atty., El Paso, Tex., for plaintiff.

Richard D. Esper, Mitchell Esper, El Paso, Tex., for claimants.

### MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is a civil action for the forfeiture of monetary instruments pursuant to 31

U.S.C. § 5317(c). On April 23, 1986, representatives of the United States Customs Service seized the Defendant currency and check from one Raul Arvizo in El Paso, Texas. The Plaintiff United States of America filed a complaint for forfeiture, which was contested by the Claimants Raul Arvizo-Morales and Casa de Cambio Juarez. The case was tried to the Court without a jury. The Court's findings of fact and conclusions of law are incorporated in this opinion.

Claimant Casa de Cambio Juarez is a money exchange house located at 2675 East 16th of September Avenue in Juarez, Mexico. It is engaged in the business of exchanging dollars for pesos and vice versa. Francisco Arvizo is one of the principal owners of Casa de Cambio and his brother, Claimant Raul Arvizo, is an employee of the exchange house. Casa de Cambio maintains a bank account in El Paso, Texas for the purpose of depositing dollars which it receives in exchange for Mexican pesos. On April 23, 1986, Raul Arvizo was delegated to transfer a quantity of currency and a number of checks from Juarez to El Paso. Arvizo arrived at the Paso Del Norte port of entry at approximately 1:00 p.m. bearing $173,081.04 in currency and the $21,128.00 check which together became the subject matter of this forfeiture action. Arvizo went to the Customs Office and presented a completed Customs Form 4790, Report of International Transportation of Currency or Monetary Instruments (Pl.Ex. 1). Part III of the form reported that Arvizo was importing $172,081.04 in currency and checks totaling $70,772.55. Customs Agent Marcus Payan, who received the Form 4790, asked Arvizo to show him the currency and checks. Arvizo told Payan that he had left the money and checks in his pickup truck, so he went back outside to get it. When Arvizo reappeared, he had in his hands a red nylon bag and a brown paper grocery sack. The grocery sack contained $20,685.04 in currency; the remaining currency and all of the checks were contained in the red nylon bag. The Form 4790 filed by Arvizo reported that the destination of all the money was the Texas Commerce Bank in El Paso, Texas. In checking the form for accuracy, Payan asked Arvizo whether the Texas Commerce Bank was in fact the destination of all the money and checks. Arvizo replied that it was, except for the money contained in the brown paper sack. According to Arvizo, he was taking that money to the Don Peso's Money Exchange at 913 South Stanton Street. When asked by Payan why he had not reflected that information on the Form 4790, or prepared a second form, Arvizo shrugged his shoulders and said he should have done so. Payan proceeded to count the money and checks, whereupon he discovered that the two bags combined contained currency in the amount of $173,-081.04, or $1,000.00 more than reported on the Form 4790. At this point in the proceedings, Arvizo requested permission to change or modify the Form 4790. Instead, Payan decided to seize the money pursuant to 31 U.S.C. § 5317(c).

Federal law requires that any person who imports or exports monetary instruments worth more than $10,000.00 at one time file a written report of that transaction on a form promulgated by the Secretary of the Treasury. 31 U.S.C. § 5316. The term "monetary instruments" is defined to include both United States currency and bearer negotiable instruments. 31 U.S.C. § 5312(a)(3). The report must reflect the amount and kind of monetary instruments being transported, the origin, destination and route of the monetary instruments, and the identities of the persons who originated the transportation and who are to receive the monetary instruments. 31 U.S.C. § 5316(b). Monetary instruments transported into or out of the United States without a form being filed, or with respect to which a form is filed containing material misstatements or omissions, are subject to seizure and forfeiture. 31 U.S.C. § 5317(c); 31 C.F.R. § 103.48.

In the instant case, it is not disputed that Raul Arvizo was importing more than $10,-000.00 worth of monetary instruments from Mexico into the United States; that the law required the filing of a report form, and that Arvizo actually filed a Form 4790. The issue presented is whether Arvizo

knowingly filed a form containing omissions or misstatements, and, if so, whether the omissions or misstatements were material.

■ Monetary instruments which are being transported are not subject to seizure and forfeiture unless the person transporting them knowingly fails to comply with the reporting requirements. *United States v. $24,900.00 in U.S. Currency*, 770 F.2d 1530 (11th Cir.1985). In the instant case, the Plaintiff has carried its burden of proving that Raul Arvizo knowingly failed to comply with the law and regulations. Arvizo was well aware of his obligation to file a Customs Form 4790 at the time he imported monetary instruments into the United States. In fact, the evidence shows that he had personally filed more than 100 such forms prior to April 23, 1986 (Pl.Ex. 5). Moreover, he was specifically aware of his reporting requirement with respect to the instant transaction, because he presented a Form 4790 to Customs officials at the Paso Del Norte Bridge at the time of his entry. (Pl.Ex. 1) The Form 4790 filed by Arvizo purports to show that the destination of all the money and checks was the Texas Commerce Bank at Mesa and Stanton Streets in El Paso, Texas. When he was questioned by Customs Agent Payan, Arvizo admitted that this statement was not true. More than $19,000.00 was destined for the Don Peso's Money Exchange in El Paso. Furthermore, Arvizo was aware of this misstatement. According to his testimony, his brother, Francisco Arvizo, had informed him before his departure that he was to take $19,685.04 to Don Peso's to complete a exchange of pesos for dollars that had taken place earlier that day. Raul Arvizo had even segregated the funds to be delivered to Don Peso's by placing them in the brown paper grocery sack.[1] Finally, Raul Arvizo admitted in testimony that Casa de Cambio Juarez maintains a supply of Forms 4790 both in an English language and Spanish language version, and that he could have prepared a correct form before departing for El Paso. Clearly, therefore, Arvizo's

misstatement was "knowingly" made, and the Court finds it was also "material." In fact, it related to matters which are central to the reporting requirement. The statute specifically requires that the bearer of the monetary instruments report their destination (31 U.S.C. § 5316(b)(2)) and the identity of the person who is to receive them (31 U.S.C. § 5316(b)(3)). If the Court were to hold that such disclosures were not material, the statutory scheme would largely be rendered meaningless.

■ Claimants contend that Raul Arvizo had the right to amend his Form 4790 after he admitted the misstatement, and that Agent Payan was obligated to allow the amendment. There is no support for this position in the law or regulations. Title 31 C.F.R. § 103.26(b) provides that: "[r]eports ... shall be filed at the time of entry into the United States...." In a case interpreting this regulation, *United States v. $47,980.00 in Canadian Currency*, 726 F.2d 532 (9th Cir.1984), the Ninth Circuit stated at page 534:

> In our view, the statute and regulations clearly impose a duty to report at least by the time of inspection, and a failure to report at that time completes the violation. Any other construction would render enforcement difficult and would frustrate the congressional intent underlying the reporting requirement as well as the intent behind the statute authorizing forfeiture of monetary instruments "being transported" in violation of the reporting requirement.

Although the instant case involves the filing of a false report, rather than a failure to report, the reasoning of the Ninth Circuit is equally applicable. Arvizo had completed his entry into the United States and had presented himself and his Form 4790 for inspection, and Payan was in the process of verifying the contents of the report when the misstatements were discovered. The violation was complete, and forfeiture

---

1. Raul Arvizo apparently miscounted the currency. The grocery sack actually contained $20,685.04.

of the monetary instruments was authorized.

■ The Claimants argue strenuously that if any forfeiture is ordered in this case, the Court should exercise its discretion to forfeit only the $19,685.04 that was destined for Don Peso's Money Exchange. Dicta in some of the reported cases does suggest that the trial court has discretion to order forfeiture of less than the entire amount of currency or other monetary instruments seized. *See United States v. $24,900.00 in U.S. Currency, supra* at 1533 n. 8; *United States v. $48,595.00,* 705 F.2d 909, 913–14 (7th Cir.1983). The preponderance of judicial authority, however, clearly favors forfeiture of the entire amount. *See United States v. Currency Totaling $48,318.08,* 609 F.2d 210, 215–16 (5th Cir.1980); *United States v. $239,-500.00 in U.S. Currency,* 764 F.2d 771 (11th Cir.1985); *United States v. $11,-580.00 in U.S. Currency,* 454 F.Supp. 376, 382–3 (M.D.Fla.1978). Total forfeiture is further supported by the regulation promulgated by the Secretary of the Treasury pursuant to the statute, 31 C.F.R. § 103.48, which provides in pertinent part as follows:

> Any currency or other monetary instruments which are in the process of any transportation with respect to which a report is required under Section 103.23 are subject to seizure and forfeiture to the United States if such report ... contains material omissions or misstatements. The Secretary may, *in his sole discretion, remit or mitigate any such forfeiture in whole or in part* upon such terms and conditions as he deems reasonable. (Emphasis added).

This regulation seems to make it clear that all the monetary instruments being transported in one "batch" are subject to seizure and forfeiture if a material misstatement or omission is made with respect to any part of the transaction, and that the Secretary of the Treasury, not the trial court, has the discretion to remit or mitigate forfeiture.

In light of the foregoing discussion, the Court finds that the Plaintiff United States of America is entitled to a judgment of forfeiture with regard to the $173,081.04 in currency and the check for $21,128.00.

It is therefore ORDERED that judgment be, and it is hereby entered in favor of the Plaintiff, and the $173,081.04 in currency and personal check drawn by Jaime Buendia in the amount of $21,128.00 be, and it is hereby, forfeited to the use and benefit of the United States.