835 F.2d 1141
 56 USLW 2481
 UNITED STATES of America, Plaintiff-Appellee,
v.
$173,081.04 IN U.S. CURRENCY AND ONE PERSONAL CHECK DRAWN BY
JAIME BUENDIA IN THE AMOUNT OF $21,128.00, Defendant,
and
Raul Arvizo-Morales & Casa de Cambio Juarez, Claimants-Appellants.
 No. 87-1132.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 22, 1988.
 
 Richard D. Esper, Mitchell Esper, El Paso, Tex., for claimants-appellants.
 Mark M. Greenberg, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before REAVLEY, POLITZ, and JONES, Circuit Judges:EDITH H. JONES, Circuit Judge:
 
 
 1
 Claimants appeal the district court's judgment that they must forfeit $194,209.04 for violating the Currency and Foreign Transactions Reporting Act, 31 U.S.C. Sec. 5311 et seq. Although the result in this case is undeniably harsh, as are most forfeiture actions, we are constrained to affirm with a modification.
 
 FACTS
 
 2
 Raul Arvizo-Morales is an employee at Casa de Cambio Juarez, a monetary exchange business located in Juarez, Mexico. On April 23, 1986, Arvizo-Morales completed Customs Form 4790, Report of International Transportation of Currency or Monetary Instruments, indicating that Casa de Cambio was depositing currency of $172,081.04 and checks totalling $70,772.55 into its account at Texas Commerce Bank (TCB) in El Paso.[1] Just before Arvizo-Morales left to make the deposit, Francisco Arvizo-Morales, a principal owner of Casa de Cambio and Raul's brother, told him to take $19,685.04 from the total currency and deliver it to Don Peso's Money Exchange House for payment of pesos purchased by Casa de Cambio from Don Peso's a day earlier. Arvizo-Morales then placed $19,685.04 in a separate bag and left for El Paso without revising Form 4790 to indicate that the money was being taken to two destinations.
 
 
 3
 Arvizo-Morales presented Form 4790 to Customs Agent Marcos Payan at the border. When asked whether the information on Form 4790 was correct, Arvizo-Morales said yes. At Payan's request, Arvizo-Morales walked back to his vehicle and returned to the Customs office with the two bags of money. When Payan asked whether the money in both bags was being taken to TCB Arvizo-Morales indicated that the bag containing $19,685.04 was being taken to Don Peso's. Payan then counted $20,685.04 in the separate bag. Both Payan and Arvizo-Morales then recounted the money and still noted a $1,000 difference. Payan then declined Arvizo-Morales' request to modify Form 4790[2] and seized all of the currency and checks.[3] Payan testified that he had three reasons for seizing the money: The report did not list Don Peso's as a destination, the report did not indicate that Arvizo-Morales was acting as an agent for Don Peso's, and the reported amount of money was off by $1,000.
 
 
 4
 The district court ordered forfeiture of all of the currency and the single negotiable check for $21,128.06 after concluding that the claimants' failure to list Don Peso's as a destination was a material misstatement or omission that was knowingly made,[4] 652 F.Supp. 1468. We address two issues on appeal: whether the Government was required to prove that the claimants knowingly failed to list Don Peso's as a destination, and whether only that portion of the money destined for Don Peso's should have been forfeited.
 
 INTENT TO MISREPRESENT OR OMIT
 
 5
 The district court, relying on numerous facts, concluded that the claimants filed Form 4790 knowing that it contained a material omission or misstatement. The claimants concede that their failure to list Don Peso's as a destination was material. See 31 U.S.C. Sec. 5316(b). They allege, however, that such failure was not knowingly done but was the result of an accident, inadvertent mistake, or innocent error. They point out numerous facts to buttress their contention.
 
 
 6
 Whether the facts indicate that the claimants' failure to list Don Peso's as a destination was intentional or inadvertent is irrelevant. At the time of this event, 31 U.S.C. Sec. 5317(c) provided in relevant part: "A monetary instrument being transported may be seized and forfeited to the United States Government when a report on the instrument ... has not been filed or contains a material omission or misstatement."[5] We have held that a party must have knowledge of the reporting requirements before his money is subject to forfeiture under Sec. 5317(c). See United States v. Granda, 565 F.2d 922 (5th Cir.1978); see also United States v. One Lot of $24,900 in U.S. Currency, 770 F.2d 1530 (11th Cir.1985); United States v. $48,595, 705 F.2d 909 (7th Cir.1983). But see United States v. $359,500 in United States Currency, 828 F.2d 930 (2d Cir. 1987); United States v. $47,980 in Canadian Currency, 804 F.2d 1085 (9th Cir.1986); United States v. $20,757.83 in Canadian Currency, 769 F.2d 479 (8th Cir.1985). These cases offer no assistance here, however, because this is not a failure-to-report case. Rather, these claimants, well aware of the reporting requirements, nevertheless filed a report containing a material misstatement or omission. Section 5317(c) only requires that the misstatement or omission be "material" before the filing party's money becomes subject to forfeiture. The statutory language does not require examination of the party's mental state and the district court's finding of a "knowing" misstatement was therefore unnecessary. Cf. Sec. 5316(a) ("knowingly transports"); Sec. 5322(a) & (b) ("willfully violating"). Under the clear and unambiguous language of Sec. 5317(c), the claimant's money became subject to forfeiture when Arvizo-Morales tendered the materially incorrect Form 4790 to Payan, regardless of whether the reporting error was intentional or inadvertent.
 
 
 7
 Claimants argue that under regulations applicable to tariff collection, 19 C.F.R. Sec. 148.16, a declaration made before examination of one's baggage has begun may be amended after the commencement of the inspection if undeclared articles have not yet been found and the officer perceives no fraudulent intent. They would have their conduct tested against this standard. Although the Treasury Department might sensibly promulgate a regulation permitting amendments to Form 4790 reports for the purpose of correcting inadvertent errors, it has not done so, and there is no suggestion in the language of 19 C.F.R. Sec. 148.16 or elsewhere that renders it susceptible to application in currency forfeitures. We cannot accept this defense.
 
 FORFEITURE
 
 8
 The claimants alternatively contend that because the reporting violation found by the district court concerns only the funds destined for Don Peso's, only those funds should be subject to forfeiture. This argument is appealing, especially because the record overwhelmingly suggests that the reporting error was simply an oversight and would never have come to the Government's attention but for the candor of Arvizo-Morales. We agree with the district court, however, that the federal judiciary has no statutory authority to reduce the forfeiture amount in this case.[6]
 
 
 9
 As the district court noted, 31 C.F.R. Sec. 103.48, enacted pursuant to the Currency and Foreign Transactions Reporting Act, provides:
 
 
 10
 Any currency or other monetary instruments which are in the process of any transportation with respect to which a report is required ... are subject to seizure and forfeiture to the United States if such report ... contains material omissions or misstatements. The Secretary [of the Treasury] may, in his sole discretion, remit or mitigate any such forfeiture in whole or in part upon such terms and conditions as he deems reasonable. (emphasis added)[7]
 
 
 11
 This regulation indicates that all money associated with the materially incorrect report is subject to forfeiture and that only the Secretary of the Treasury has discretion to remit any or all of the forfeited funds. By negative implication, no power to ameliorate an individual forfeiture has been conferred on the federal courts. Claimants cite no authority supporting their position, and this court has previously rejected imposing a partial forfeiture. United States v. Currency Totalling $48,318.08, 609 F.2d 210 (5th Cir.1980).
 
 
 12
 The claimants argue that the unfairness of forfeiture is compounded because they were never given an opportunity to request mitigation of forfeiture from the Secretary of the Treasury, and are precluded from doing so now, since the Government removed the claim from administrative review by filing its complaint in federal district court only eight days after the funds were seized. We can find no federal statute or regulation barring administrative review of a claim once a party has filed a complaint in federal district court. In view of the twin facts that the claimants had the right to contest the propriety of the forfeiture and that we have no authority to order partial forfeiture, we see no reason why claimants' claim for administrative relief has been waived by awaiting the outcome of this case. Our decision is thus entered without prejudice to claimants' exercise of administrative remedies.[8]
 
 
 13
 The judgment of the district court is AFFIRMED as modified.
 
 POLITZ, Circuit Judge, dissenting:
 
 14
 We today affirm the forfeiture of $194,209.04 because of an innocent omission which, on the record before us, reflects neither deviousness nor effort to subvert the regulatory statute at issue. Convinced that we do an injustice, I must dissent.
 
 
 15
 Raul Arvizo-Morales was employed by Casa de Cambio Juarez, a money exchange operation located in Juarez, Mexico. His brother Francisco is a principal owner of the business. Raul Arvizo's duties included transporting money, both dollars and pesos, back and forth across the United States/Mexico border. Prior to the fateful April 23, 1986 trip, he had brought currency into the United States without incident on more than 100 occasions. He did so on a regular, tedium-latent basis.
 
 
 16
 On the morning of April 23, 1986 Francisco told Raul to take certain funds to the Texas Commerce Bank in El Paso. The cash and checks were counted and Raul prepared Customs Form 4790, Report of International Transportation of Currency or Monetary Instruments. The correct total of the deposit, including certain non-negotiable instruments for which there was no obligation to declare, and the Texas Commerce Bank destination were noted on the form.
 
 
 17
 Just as Raul was preparing to leave, Francisco told him that there had been a transaction with Don Peso's Money Exchange House in El Paso and Casa de Cambio owed Don Peso's $19,865.04. Francisco instructed his brother to count out that amount from the sums he had for deposit and to take it to Don Peso's when he made the trip to the El Paso Bank. Raul complied and put $20,865.04[1] in a separate paper bag. The rest of the funds were in a nylon bag.
 
 
 18
 When Raul arrived at the Paso Del Norte port of entry he presented the completed Form 4790 and his personal identification to the custom agent. The agent examined the identification and the form and then instructed Raul to bring in the funds for verification. Raul went to his vehicle and returned with both the nylon bag and the paper sack. At this point, before the money had been counted, the agent asked if all of the money was going to the Texas Commerce Bank. Raul responded: "Yes, except for the contents of the brown paper sack" which he explained he was to take to Don Peso's Money Exchange. When asked why he had not put that on the form Raul shrugged his shoulders. He then requested permission to add that additional destination to the form. The agent summarily denied the request, seized all of the currency and contacted the United States Attorney's office.
 
 
 19
 Interestingly enough the agent was most concerned, at the time of the seizure and trial, with the miscount of the funds in the paper sack. Apparently so was Raul, but one could understand his concern entirely separate from compliance with the requirements of the currency disclosure law. He had made that $1,000 error. He had to account for it to his employer-brother.
 
 
 20
 The majority today holds that when Raul handed the agent the Form 4790 the matter was immediately and irretrievably fixed in stone with no room for innocent error or omission, or the correction of same. When the form was handed over, it was a done deed. No correction or repair was possible. I do not perceive the act of handing over a form as a final commitment to a course of action like a bullet leaving the end of the barrel of a gun. Fact-specific justice requires more. The purpose of the currency disclosure legislation is not served by today's harsh result. I am unable to fathom any purpose which is served other than to punish Raul and his employer for what is an oversight or, at worst, slovenly completion of a form. I respectfully dissent.
 
 
 
 [1]
 Arvizo-Morales completed Form 4790 because he was transporting monetary instruments of more than $10,000 into the United States. See 31 U.S.C. Sec. 5316(a)(1)(B). He previously had completed dozens of these forms
 
 
 [2]
 The record is unclear whether Arvizo-Morales requested to modify the amount, the destination, or both
 
 
 [3]
 Payan subsequently returned checks totalling $49,644.49 because they were non-negotiable. Non-negotiable checks are not required to be reported on Form 4790. See 31 U.S.C. Sec. 5312(a)(3)
 
 
 [4]
 The district court did not support its forfeiture decision by relying upon Payan's additional reasons for seizing the money, nor does the Government urge those other reasons on appeal
 
 
 [5]
 Section 5317(c) was amended in October 1986 and now reads as follows: "If a report required under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government ... ."
 
 
 [6]
 Whether the forfeiture amount could sustain constitutional attack is not before us, as claimants have raised no constitutional challenges in this case. Cf. United States v. Busher, 817 F.2d 1409 (9th Cir.1987) (RICO forfeitures may violate Eighth Amendment); but see United States v. Grande, 620 F.2d 1026 (4th Cir.), cert. denied, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980)
 
 
 [7]
 See also 31 U.S.C. Sec. 5317(c) (Monetary instruments being transported may be seized and forfeited if report is materially incorrect); 31 U.S.C. Sec. 5321(c) ("The Secretary may remit any part of a forfeiture" under Sec. 5317(c)). In the absence of 31 U.S.C. Sec. 5321(c) or 31 C.F.R. Sec. 103.48, "the Secretary would be unable to correct an injustice if evidence came to light that a penalty which had been paid had been unjustly imposed." H.Rep.No. 91-975, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 4394, 4408. See also S.Rep.No. 91-1139, 91st Cong., 2d Sess. at 7 (1970) (The Secretary has discretion to remit any part of a forfeiture "to prevent ordinary citizens or businessmen from being unduly penalized for an inadvertent violation.")
 
 
 [8]
 The Currency and Foreign Transactions Reporting Act vests the Commissioner of Customs with authority to enforce compliance with the reporting and forfeiture provisions at issue here. See 31 C.F.R. Sec. 103.46(b)(7). We will not speculate on the precise administrative procedure that applies here, observing only that one Customs statute, if it applies, provides that a person whose property has been seized can petition the Secretary of the Treasury for redress. See 19 U.S.C. Sec. 1618. A regulation enacted pursuant to 19 U.S.C. Sec. 1618 provides that the claimant must file his petition for relief "within 30 days from the date of the mailing of the notice of fine, penalty, or forfeiture incurred." 19 C.F.R. Sec. 171.12(b). According to 19 C.F.R. Sec. 162.31(a), the notice of forfeiture must inform the claimant that he can seek relief under 19 U.S.C. Sec. 1618 or any other applicable statute authorizing remission of forfeitures
 
 
 [1]
 Although the government sought to make something sinister of this $1,000 error, the trial court considered it an inadvertent error, a simple miscount. The record fully supports that finding. Anyone who has counted currency knows that errors of $0.10, 1.00, 10.00, 100.00, and 1,000.00 are the easiest to make and the most frequently made